(115 So. 59)

No. 26750.

WHITE et al. v. BERGSTEDT.

Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Vendor and purchaser** ⊚⟶89—Sales; one selling 162 acres of cut-over grazing land for $700 held not entitled to rescission for lesion, notwithstanding secret negotiations for oil development of nearby lands.

Vendor, selling 162-acre tract of cut-over land without improvements, suitable only for cattle range, for $700, *held* not entitled to rescind on ground of lesion beyond moiety, notwithstanding speculation carried on in nearby lands for oil development purposes, where such negotiations were secretly conducted and un-

known to purchaser, and land acquired temporary speculative value subsequent to purchase.

2. **Vendor and purchaser** ⊚⟶89—Sales; speculative value of land for contemplated oil development, unknown to public, is not considered in determining whether lesion exists.

Fictitious and speculative value, which a few landowners, oil scouts, and business men place on land because of possible oil developments, not known to public, will not be considered in determining whether or not lesion beyond moiety exists on sale of property.

3. **Vendor and purchaser** ⊚⟶104—Sales; vendor, to rescind for lesion, must establish with legal certainty that market value of property was more than double price received.

In order to rescind a sale for lesion, vendor must establish with legal certainty that market value of property at date of sale was more than twice the amount the purchaser paid for it.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Thomas F. Porter, Jr., Judge.

Action by Louis J. White and others against Miss Effie A. Bergstedt. From a judgment rejecting plaintiffs' demands, they appeal. Affirmed.

Leon Sugar, of Lake Charles, for appellants.

Cline & Plauche, of Lake Charles, for appellee.

Pujo & Bell, of Lake Charles, for intervener.

BRUNOT, J. The appeal in this case is from a judgment rejecting the demands of the plaintiffs at their cost. They sued for the rescission of the sale of a tract of land situated in Calcasieu parish, alleging lesion beyond moiety as their cause of action.

The defendant acquired the land from the plaintiffs on April 25, 1923, for $700, which price, the deed recites, was paid in cash. Thereafter the defendant sold two parcels of the land to different purchasers; she sold an undivided one-sixteenth interest in the

oil, gas, and other minerals beneath the surface of a part of it to another person; and she executed an oil and gas lease, which conveyed to the lessee, during a fixed period of time, the exclusive right to prospect for oil and gas on about 110 acres of the tract. The Vacuum Oil Company became the assignee of this lease, and all of the parties who had thus acquired an interest in parcels of the land intervened in this suit.

The sole issue in the case is whether or not the price actually paid by defendant for the land was less than one-half of its value at the date of the sale. It is not necessary to consider the asserted rights of the interveners at this time, for it is admitted, in the brief of counsel for plaintiffs, that they cannot be disturbed by any judgment that may be rendered herein.

[1-3] The record discloses that the tract of land involved in the suit contains about 162 acres of knolly, partly swampy, cut-over land. There are no improvements on it. It has not been cleared of stumps, but, if the stumps were removed, not more than one-fourth of it could be made fit for cultivation, and such parts as could be subjected to cultivation would lie in scattered parcels of a few acres each. It is also shown that the land is only suitable for a hog, cattle, or goat range, and that the defendant acquired it for that purpose. It is shown that, a short time after the defendant purchased the land, it acquired a temporary speculative value by reason of its supposed proximity to oil and gas bearing lands. There is testimony in the record showing that, prior to defendant's purchase of the land from the plaintiffs, certain interested persons leased lands near the land of defendant for oil development purposes; but it is also shown that those negotiations were secretly conducted, that the leases thus obtained were not placed of record, and that defendant was not aware of them. Moreover, it is shown that, a long time prior to

these activities, the defendant had opened negotiations with the plaintiffs for the purchase of the land. In summing up the testimony the district judge correctly says:

"A fictitious and speculative value, which a few landowners, oil scouts, and business men place upon land because of possible oil developments, where such intended or possible oil developments are not known to the public, and are only known to a few men on the inside of the oil fraternity, such fictitious or speculative value will not be considered in determining whether or not lesion beyond moiety exists."

As illustrative of the secrecy attending the activities of the oil men in the vicinity of defendant's land, and of the fact that those activities had no effect upon the value of that land at the time defendant acquired it, we need only quote from the testimony of one of plaintiffs' witnesses, the following:

"Q. Mr. Lemoine, is it not a fact that the general public is not acquainted with the developments, prospective developments, in the Lockport territory until some time in June, 1923?

"A. 1923—On August 4, 1922, I located those indications; and I made it my business and those connected with us to let this remain absolutely secret, in order to get development over there, and nobody outside of the people connected with us. Then on March 10, 1923, I took the Vacuum Oil Company's geologist over there, and on March 17, 1923, the first lease was made—Lock-Moore Company.

"Q. Was it placed of record?

"A. No; indeed, not. It was placed in the Calcasieu National Bank, to remain absolutely secret until we blocked the territory. They knew nothing about it until the middle of 1923, because those leases were locked in the safe; not put of record, for the express purpose of keeping them absolutely secret. If it had not been kept secret, there would be no drilling going on there now.

"Q. Now, do you think there—from the standpoint of the general public, there could be in April, 1923, an enhancement in the value of land on account of prospective oil development?

"A. Not at all. I knew every party that knew of those indications at that time, and I know that, had they known, I would never have blocked it."

From this and other testimony in the record, it is clear that, at the time the defend-

ant purchased the land from the plaintiffs, it had not then enhanced in value by reason of the activities of Mr. Lemoine and other oil prospectors in the Lockport territory.

In order to rescind a sale for lesion, the rule is that then plaintiff must establish, with legal certainty, that the market value of the property, at the date of the sale, was more than twice the amount the defendant paid for it. The record discloses that all of the witnesses who testified on the trial of this case, as to the value of the land sued for, with one exception, say that, if the speculative value of the land for oil and gas purposes is disregarded, its market value is much less than twice the price the defendant paid for it.

In the case of Copley v. Flint, 1 Rob. 125, the syllabus is as follows:

"The action of rescission for lesion was intended for the protection of those who have been driven by their necessities, or have, through weakness or improvidence, suffered a loss on the sale of land of more than half its value."

In the body of the opinion the court uses this language:

Lesion supposes that the vendor is in absolute want of money, and that the only purchaser he had been able to find has abused his necessity.

In the case of Demaret v. Hawkins, 8 La. Ann. 483, the court said:

"The right to rescind a sale for lesion beyond moiety is the only restraint upon the liberty of the citizen to bind himself and his property according to the dictates of his own judgment; and the evidence relied on to establish lesion should be peculiarly strong and conclusive."

The later jurisprudence of the state is in accord with the authorities cited supra. The district judge found that the plaintiffs had not proven their case with the degree of certainty necessary to entitle them to recover and he so decreed. We think the judgment is correct, and it is therefore affirmed, at appellant's cost.