LANDRY, Judge.
Plaintiff appellant Charles A. Martin filed this action against defendant D. W. Mays, Jr. to rescind, for alleged lesion beyond moiety, the sale of a 19 acre tract of land situated near Leland College in the vicinity of the Town of Baker, East Baton Rouge Parish, said sale having been executed by plaintiff on February 11, 1959, in consideration of the payment of the sum of $1,425 cash or $75 per acre. In the prayer of his petition, plaintiff prays the sale be declared subject to attack for lesion and the defendant ordered to elect to either accept payment of the purchase price and return the property to plaintiff or keep the land and pay plaintiff the additional sum of $11,785 which plaintiff alleged to be the difference between the amount paid and the actual value of subject property on the date of the sale, namely, $13,300.
For written reasons assigned, the learned trial judge rejected plaintiff’s demand, hence this appeal.
Relying heavily upon the decision of the Supreme Court of this state in Armwood v. Kennedy, 231 La. 102, 90 So.2d 793, the trial court held plaintiff was not entitled to relief herein because of his failure to prove by clear and convincing evidence the value of the land according to the state in which it existed at the time of sale to defendant Mays. Predicated upon the Armwood case, *78 supra, he further concluded market value according to best and highest use is not the criterion of value in lesion cases and that said standard of measurement of value (as held by the Supreme Court in the Armwood case) is applicable only in expropriation cases.
At the time of the sale involved in this litigation, plaintiff, an elderly retired Negro school teacher was using same as a pasture and had in the past conducted limited farming operations thereon. The tract is situated near the Negro educational institution known as Leland College, lying to the North thereof and being separated therefrom by a Negro residential subdivision known as Leland College Annex containing from 600 to 700 residential sites, a small number of which have homes situated thereon. Generally the quality of construction in Leland College Annex is considered poor or inferior in quality although it is conceded that a few of the homes therein are of substantial construction. Utilities such as water and gas although not directly available to subject property extend to within a reasonable distance thereof. Subject property is rectangular in shape measuring 524.9 feet on its Northern and Southern boundaries, its Eastern and Western lines measuring 1,493.2 feet. It is separated from Leland College Annex by a one acre tract (formerly a portion of plaintiff’s property) measuring 83.8 feet by 524.9 which said one acre tract lying immediately to the south of subject property is itself bounded on the south by a right of way designated for roadway purposes and lying between said one acre tract and Leland College Annex. The property is bounded on the east by a right of way or servitude 40 feet in width reserved for the construction of a road. To the east of said roadway servitude is situated a plotted and designated but relatively undeveloped Negro residential subdivision known as College Acres.
Access to Leland College Annex (lying to the south of subject property) is gained by way of Groom Road which forms the Southern boundary of said subdivision. The layout of Leland College Annex is such that it is a rather long narrow subdivision the principal streets of which run from north to south. Chamberlain Avenue (a 40 foot gravel street) one of the principal thoroughfares in Leland College Annex runs from Groom Road northerly to the northern extremity of Leland College Annex and stops a short distance south of subject property. The northerly projection of Chamberlain Avenue forms a connecting link with the 40 foot servitude reserved along the eastern boundary of subject property. Although the servitude fronting subject property on the east has never been developed the evidence shows that during good weather vehicles may reach subject property via Chamberlain Avenue and thence traveling along the unimproved 40 foot servitude. Approximately 1/2 mile to the North of the property in question is situated a public gravel road known as Heck Young Road which connects with a principal thoroughfare known as Scenic Highway. There is some evidence that access may be had to Heck Young Road from subject property via the reserved servitude on the east thereof during sustained periods of dry weather but all parties concede the roadway easement has never been developed and is totally unimproved. There is further evidence that in the vicinity of the northern boundary of subject property a slough crosses the servitude rendering it impassable during and for long periods following rain.
Appellant concedes the sole issue herein involved is the value of the property on the date of its sale to defendant herein. It is further admitted plaintiff must prove the value of the property in the state in which it was at the time of the contract and that the burden is incumbent upon plaintiff to prove by clear and convincing evidence the property was sold for less than half of its value.
Appellee maintains plaintiff has failed to establish the value of the property, in the state in which it existed at the time of sale, namely, pasture land, was double the price *79 paid therefor and in this connection relies heavily upon the decision in Armwood v. Kennedy, 231 La. 102, 90 So.2d 793, which defendant argues establishes a rule in lesion cases different from that applicable in expropriation suits. Defendant contends the Armwood case, supra, held that market value according to best and highest úse is the measure of value only in expropriation cases whereas in matter involving lesion market value at the time of sale must be determined solely by the state of the property at the time of sale rather than best and highest use. The rationale for the distinction, according to defendant, is that in expropriation suits the owner is not a willing seller but is compelled to part with his property and should, therefore, be compensated on the basis of its best and highest use whereas, in lesion cases the transaction is between a willing buyer and a vendor who freely and voluntarily disposes of his property.
The rules by which alleged instances of lesion beyond moiety must be resolved are set forth in the following articles of LSA-C.C., namely:
“Art. 1860. Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.”
“Art. 1861 * * *, subd. 2. In sales of immovable property, the vendor may be relieved, if the price given is less than one-half of the value of the thing sold; but the sale cannot be invalidated for lesion to the injury of the purchaser.”
“Art. 1870. When lesion is alleged to invalidate a partition or sale, the party alleging it must first prove the value of the property sold, in the state in which it was at the time of the contract, * * *. He must then show how much the price given was less than such value * * *.”
“Art. 1871. In all questions of lesion the value of that which was the subject of the contract at the time of making it, is the rule by which the lesion is to be ascertained. Even in the case of minors, changes in value by subsequent events are not to affect the contract.”
“Art. 2589. If the vendor has been aggrieved for more than half, the value of an immovable estate by him sold, he has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission, and declared that he gave to the purchaser the surplus of the thing’s value.”
“Art. 2591. If it should appear that the immovable estate has been sold for less than one-half its just value, the purchaser may either restore the thing and take back the price which he has paid, or make up the just price and keep the thing. (As amended by Acts 1871, No. 87.)”
The jurisprudence of this state is clearly established to the effect that in an action for lesion the standard for determination of the value of the property involved is fair market value at the time of the sale, the term “fair market value” meaning the value arrived at as between a willing buyer and a willing seller. The foregoing principle has been proclaimed and reiterated on innumerable occasions by the Supreme Court and the Courts of Appeal of this State. See Henderson v. Dyer, La.App,, 68 So.2d 623 and cases cited therein.
Our careful consideration of the Arm-wood case, supra, leads us to conclude it does not have the far reaching effect so forcefully attributed to it by astute counsel for defendant. In that case the plaintiff therein sold a 10 acre tract of land situ *80 ated near Zachary, Louisiana, for the price of $5,000. Said tract, lying between a white and Negro subdivision, was, at the time of its sale, being used as a cow pasture. Contending the property was worth in excess of $11,000 plaintiff sought to rescind its sale for lesion contending the value thereof on the date of the sale should be computed according to its best and highest use which plaintiff asserted to' be subdivision purposes. In rejecting plaintiff’s contention that market value of the property considering its best and highest use was the standard by which fair market value should be adjudged, the Supreme Court stated [231 La. 102, 90 So.2d 795]:
“Appellant has cited cases in support of his contention that the market value of the property is the highest and best use to which the land may be put. An examination of these cases reveals that they were expropriation cases and not suits by the vendor against the vendee for the rescission of the sale on the ground of lesion. Hence the rule there enunciated is not applicable herein.
“It, therefore, must be concluded that the market value of the land involved herein is the value of pasture land at the time of the sale and, since plaintiff-appellant has failed to prove that the price received was less than half of that value, his demand must be rejected.”
Viewing the holding in the Armwood case, supra, in the light of the circumstances involved therein together with prior and subsequent jurisprudence on the subject matter involved, we cannot attribute to that decision the far reaching effects learned counsel for defendant seeks to ascribe thereto. The case held the plaintiff therein failed to discharge the burden of proof incumbent upon him which requires that he prove the value of the property by clear and convincing evidence. We detect nothing in the Armwood case indicative of intention to deviate from the well established and often followed rule that in lesion cases fair market value means the fair value arrived at between a willing seller and a willing buyer under normal circumstances considering the state of the property at the time of sale. The language in the Armwood case does not eliminate all consideration of evidence relative to value for a use higher or superior to actual use at the time of sale. We believe the jurisprudence prior to the Arm-wood case clearly establishes the rule that the words “in the state at which it was at the time of the contract” as employed in Article 1870, LSA-C.C. do not preclude an owner from proof of a use higher, better or superior to its actual use when sold but means that such evidence, together with the condition or state of the property at the time of sale must be considered along with all other factors affecting market value including, inter alia, location and general economic conditions in the area, the burden resting upon plaintiff to prove by clear and convincing evidence that the value of the property in the state that it existed at the time of sale was double the price received. The language “in the state at which it was at the time of the contract” does not preclude the possible presence of marketability for a higher or better use than that in which the property was employed at the time of the contract. It is too obvious to admit of serious argument that irrespective of the state of a property at the time of its sale it may, under certain circumstances have a ready market value for a use considerably higher or better than its actual utilization when sold. Admittedly the property must be considered in the condition and state in which it was at the time of sale but it does not follow that its physical state and actual use preclude consideration of evidence of a higher or superior than actual use irrespective of the state or condition thereof. It is common knowledge that individuals frequently permit valuable property to become rundown and ill kept but it does not necessarily follow that be *81 cause land is utilized for pasture or even neglected completely its value is solely that of pasture land or abandoned property.
It is our judgment that the Supreme Court did not intend in the Armwood case to completely wipe away the prior jurisprudence on this subject matter and that what the court said therein was simply that in matters involving lesion the burden imposed upon plaintiff to prove fair market value is somewhat greater than that required of the owner seeking compensation for property taken by expropriation. We conclude the net effect of Armwood v. Kennedy to be that plaintiff in a lesion action is not barred from proof of a higher and better than actual use at the time of sale but that such evidence will be considered in the light of the state of the property at the time of sale together with all other attending circumstances affecting fair market value and considering all such factors plaintiff will be held to clear and convincing proof the sale price paid was less than one-half the fair market value of the property sold.
Plaintiff produced as a witness one W. D. McCants, an experienced realtor, who testified the highest and best use of subject property was for subdivision purposes and on said basis, he estimated value thereof at $750 per acre. In arriving at his estimate, McCants used as comparables sales of lots in the nearby subdivisions of Leland College Annex and College Acres. He also used as a comparable the sale of a 304 acre tract situated approximately one-half mile north of subject property executed in 1957, by one Edna Y. Carney to G. T. Owens at a unit price of $550 per acre; ^sale of a 10 acre parcel of land adjoining subject property on the North, which sale was executed subsequent to the sale involved in this litigation, namely, September 2, 1959, wherein Walker Y. Ronaldson sold 10 acres to Copolymer Colored Employees Social and Athletic Club for the sum of $5,350 or $535 per acre and a sale passed in 1953 in which plaintiff herein sold his son a one acre tract off the Southern end of subject property for $400. McCants considered subject property excellent for subdividing into residential lots although he conceded its present use was solely as a pasture. In his opinion, the fact that large numbers of lots remained unsold in the nearby subdivisions of Leland College Annex and College Acres did not detract from the desirability of subject property as a subdivision site. McCants did not consider that a pond (situated near the Southern end of the property in question and covering from one to three acres thereof) was a liability insofar as development of the tract was concerned.
Plaintiff also called as a witness in his behalf Kermit Williams, a realtor, who estimated the value of the property in question to be $675 per acre. In arriving at his conclusions, Williams did not consider the sale of any lots in nearby subdivisions but used as comparables the sale from Carney to Owens, the transaction between Ronaldson and Copolymer Employees Club and a transfer in 1952 of property adjacent to nearby Leland College on the West in which acreage was conveyed for the sum of $483 per acre. Williams considered plaintiff’s property superior to that purchased by Copolymer Employees because, in his opinion the former was better drained and in addition had more frontage along the roadway servitude which separated it from tire latter. He further pointed out that a canal bisects the Copolymer Employees tract from East to West whereas there is no such obstruction on plaintiff’s property.
On the question of value, defendant produced as a witness one R. O. McCraine, an insurance salesman and real estate broker in the Town of Zachary. McCraine, a member of the board of directors of a local bank, stated his principal business was that of insurance agent but that he had for a number of years conducted a part time real estate brokerage business in which he accepted listings of property which he felt he *82 could sell but that he did not solicit listings. His testimony clearly shows he is not an expert as were McCants and Williams but that he has made numerous appraisals of real estate and has a working knowledge of the principles involved therein. Predicated ttpon this general knowledge, he appraised subject property at $75 per acre. He was not familiar with the sale from Ronaldson to the Copolymer Employees Club and gave testimony which to some extent tended to show that part of the consideration involved in the sale from Mrs. Carney to Owens was undoubtedly prompted by prospective mineral development since, to his knowledge, at the time of said sale, there was considerable leasing and some drilling activity in the vicinity.
J. I. Daniels, Executive Vice-President of the Bank of Zachary, testifying on behalf of defendant, stated frankly that he had had very little experience in appraisal work and that he was to a limited extent acquainted with the value of property in the vicinity of Leland College. He did not profess to be an expert in the field of real estate appraisal and stated that in his opinion the property was worth a maximum of $125 per acre. He distinguished subject property from that sold to Owen in that he knew the Owen property to be a very nice piece of property that had been used as a dairy farm. He visited subject property and found it to be low and rather poor land. He acknowledged that on February 13, 1959, his bank made defendant a loan of $3,800 secured by mortgage on the property purchased from plaintiff and in answer to questions propounded by counsel for plaintiff on cross-examination stated the property was accepted as security for more than double the purchase price because the loan was made not only upon the basis of the property as a security but upon defendant’s position as a professor at Leland College.
Russell Doiron, realtor, testified that in his opinion the property had no value for subdivision purposes and was suitable only for the use for which it was being put, namely, that of a pasture, and as such, was valued at the sum of $100 per acre. Doiron did not consider the sale of lots in Leland College Annex as comparables because first the properties were not comparable inasmuch as Leland College Annex was a developed subdivision and secondly because his investigation of the records of East Baton Rouge Parish showed that of the approximately 700 lots situated in said subdivision, sales thereof were proceeding very slowly despite the fact that some lots in said subdivision had within the past five years sold for as little as $18.33. He discounted the sale wherein plaintiff transferred to his son the one acre tract for the recited consideration of $400 on the ground he considered it “a family transaction” and therefore not indicative of true value. Similarly he discounted another family transaction in which members of the Kelly family transferred a five acre tract among themselves for the recited consideration of $33 per acre. In this regard, learned counsel for plaintiff bitterly attacks the testimony of Doiron on the grounds of inconsistency in that counsel alleged Doiron’s testimony clearly indicates he did consider the Kelly sale (because of its low unit price) but arbitrarily rejected consideration of the transaction between plaintiff and his son. A careful consideration of Doiron’s testimony on this point convinces us that in substance Doiron disregarded both of the so-called family transactions in arriving at his value of the subject property. Doiron did not consider the sale of the Owens property comparable because his investigation showed the Owens tract had a frontage of over 500 feet on the developed gravel road known as Heck Young Road and also had some frontage on Scenic Highway which is one of the principal roadways in the Parish of East Baton Rouge. He was also of the opinion the Owens tract was more favorably located for subdivision purposes than is subject property considering subject property fronts on no developed road and access to the property involved in this litigation must be had through Groom Road by way of Chamberlain Avenue extending *83 through Leland College Annex; said Chamberlain Avenue although being well defined and laid out is poorly developed.
Doiron stated that he did not consider the property sold to Copolymer Employees comparable because said tract possessed frontage on Heck Young Road which made it more valuable than subject property.
In Doiron’s opinion, the property involved in this litigation was unsuitable for subdivision purposes. He pointed out that the property was low; that it had no direct access to an improved outlet road; that it had no utilities such as water and gas although said utilities did come to within a reasonable distance thereof and could be made available; that the costs of constructing a 1,-100 foot road along the Eastern boundary of the property over the servitude reserved therefor and the extension of utilities to serve the property would necessitate the selling of lots at such prices as to place them entirely out of competition with lots which were available for sale in more favorably situated Leland College Annex and College Acres. In addition, he pointed out that development of subject property as a subdivision at this time would be a most unwise financial venture because of the large number of unsold lots in Leland College Annex and College Acres, both of which would make a demand for lots carved out of plaintiff’s property practically nonexistent. He also stated that most of the development in Leland College Annex is in the Southern portion thereof near Groom Road upon which said subdivision fronts; the reason therefor being apparently that the persons living in said subdivision would have more ready access to said road which furnishes the principal highway entrance and exit from said subdivision. Doiron’s investigation reveals that as one proceeds from Groom Road northerly into Leland College Annex along Chamberlain Avenue the development in Leland College Annex becomes progressively inferior, the quality of the homes decreased in value and quality •of construction and the area even within Leland College Annex shows less and less indication of being a developed subdivision. Doiron related that he has a listing of a nine acre tract fronting on the West side of the reserved servitude which bounds subject property on the East, which property belongs to one Greaud who has placed it on the market for the price of $125 per acre.
In view of the evidence of record, we conclude that plaintiff has failed to discharge the burden incumbent upon him of proving the value of the property considered in the light of its actual use and the state in which it was at the time of sale, namely, pasture, was more than double the amount received therefor. In this connection, we note with considerable interest that nowhere in the record does plaintiff’s witnesses purport to establish its value as pasture. On the contrary, the testimony of defendant’s witnesses clearly shows that in the state in which it existed at the time of sale, the maximum value thereof was $125 per acre. We believe the evidence of plaintiff’s witnesses concerning the value of the property for subdivision purposes is purely conjectural and speculative in view of the general conditions shown and especially in view of the many unsold lots in adjacent subdivisions more favorably located than plaintiff’s property. On this issue we also note the testimony of plaintiff to the effect he originally agreed to sell the property to defendant for $50 per acre and that he, plaintiff, had not considered subdividing the property. We likewise note the testimony of defendant to the effect he purchased the property with the intention not of subdividing it into residential lots but solely of using same for truck farming purposes. We also observe defendant’s testimony that following the sale, defendant purchased materials to fence the property preparatory to commencing farming operations thereon and that preliminary tests run on the soil indicated its quality to be so poor as to require considerable preparation and extensive fertilizing to render it suitable and productive as a truck farm.
*84 Our consideration of the entire evidence convinces us the learned trial court properly held plaintiff has failed to establish by clear and convincing evidence the value of the property in the state and condition in which it existed at the time of sale was more than double the price received therefor. It follows, therefore, the judgment of the trial court in rej ecting plaintiff’s demand was proper and entitled to affirmation.
Affirmed.
HERGET, J., recused.