200 So.2d 700 (1967)
O. P. CROW, Plaintiff-Appellee,
v.
Annie Lee MONSELL, Defendant-Appellant.
No. 10802.
Court of Appeal of Louisiana, Second Circuit.
May 29, 1967.
Rehearing Denied July 27, 1967.
*701 Ford E. Stinson, Benton, for appellant.
J. L. Thomas, Jr., Bossier City, Henri Loridans, New Orleans, for appellee.
Before HARDY, AYRES, and BOLIN, JJ.
AYRES, Judge.
This is an action for specific performance of a contract of February 23, 1965, to sell a tract of land for a price of $10,000.00. Plaintiff paid $500.00 at the time of execution of the contract, which was to be applied on the purchase price of the property, and, through a letter from his attorney to defendant, tendered the balance of the agreed consideration. The defendant having refused to comply with the agreement, this action followed.
Defendant interposed an exception of no cause or right of action on the ground that the contract should be interpreted in such a manner as to relieve either party of liability in the event defendant failed to tender a valid title. On the merits, defendant urged the special defense of lesion beyond moiety, claiming the value of the land to have been more than $20,000.00 at the time of execution of the contract of sale. Defendant's exception was overruled and, after trial on the merits of the case, there was judgment ordering defendant to execute a conveyance of the property in accordance with the terms of the contract. From the judgment, defendant appealed.
The provision of the contract upon which defendant's exception is based provides:
"The obligation of Vendee to purchase, as hereinabove recited, is, however, contingent upon vendor. * * *
"a. Tendering a legal, valid and merchantable title to the hereinabove described property, in default of which this contract shall terminate and both parties shall be relieved of all obligations hereunder without liability or responsibility of any kind or character, * * *."
The conclusion is inescapable, when this provision is read in connection with a provision subsequently appearing in the contract to the effect that either party thereto shall have the right to specific performance in the event of failure by the other to perform, that the intent of the parties was to relieve either party from liability only in the event the vendor's title should prove to be defective.
A cardinal rule for the interpretation of contracts is that courts must seek for and ascertain, if possible, the mutual intention of the parties. LSA-C.C. Art. 1945; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (1940); Chicago Mill & Lumber Co. v. Lewis (La.App.) 68 So.2d 913 (2d Cir. 1953cert. denied). Although language employed in contracts is usually interpreted according to the ordinary and customary meaning of the words used, clauses couched in general terms, which, *702 if taken literally, would lead to unreasonable consequences must be construed according to what, under all circumstances, was probably the intention of the parties. Losecco v. Gregory, 108 La. 648, 32 So. 985 (1901); Molero v. California Company (La.App.) 145 So.2d 602 (4th Cir. 1962cert. denied). Where the words of a contract are susceptible of more than one meaning, courts must give them the interpretation that carries out the object and purpose of the contract. Robbert v. Equitable Life Assur. Soc., 217 La. 325, 46 So.2d 286 (1950). Even where the words used in a contract are fairly explicit, it is the duty of the courts to refrain from construing them in such a manner as to lead to absurd consequences. LSA-C.C. Art. 1945; Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963); Bondio v. Joseph Binder, Inc. (La. App.) 24 So.2d 398 (Orl. 1946).
To sustain defendant's contention would lead to an unreasonable, inequitable, and absurd result. Plaintiff and defendant entered into a serious contract whereby defendant agreed to sell and plaintiff agreed to buy the tract of land described in their contract, in connection with the execution of which plaintiff made a deposit to be applied upon the purchase price of the property. The agreement further provides that either party shall have the right to specific performance.
Should defendant's position be upheld, his agreement to sell would be dependent upon his will to tender, if he so desired, a title to the property. His obligation would thus be dependent upon a potestative condition. A reasonable interpretation of the agreement as a whole does not lead to such an inequitable or absurd result.
Nor do we find any basis for the release of defendant from her obligation to sell because of lesion beyond moiety. "Lesion" is defined as the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. LSA-C.C. Art. 1860. In matters of sales of immovable property, the vendor may be relieved if the price given is less than one-half of the value of the property sold. LSA-C.C. Art. 1861.
The application of these principles is dependent upon a determination of the value of the property at the time the contract was entered into. Such determination is a factual matter to be resolved from the record as made up on the trial of the case.
The property involved comprises 13.01 acres of land located at the northeast corner of the intersection of U.S. Highway 80 and the Bellevue Road, upon which is located an old frame store building formerly used as a grocery store. Across the highway and in the vicinity of the subject property is a dilapidated filling station, an old abandoned tourist court, a fairly modern store, and a junk yard. A portion of the property, from its use as a dump, had the appearance of an unsightly wrecking yard. The property was located three-and-one-half miles east of the municipal limits of Bossier City.
Four expert witnesses testified as to the value of the property. Mrs. Bertha Maude Sweeney placed a value of $32,000.00 on the property. This appraisal was based on a valuation of $6,300.00 for the store building, well, and septic tank, and a division of the remainder of the property in 100-foot lots. Lawrence L. May valued the property at $42,000.00. Neither of these witnesses had, for several years, personally handled sales of similar property in that vicinity. Their appraisals were predicated upon possible future development in the vicinity such as residential or commercial projects and the construction of a prospective exit from Interstate 20, located from one-half to three-quarters of a mile from the subject property.
A. C. Montgomery and Arthur Ray Teague, realtors and residents of Bossier City, who were for many years familiar with the property involved and its general location, testified on behalf of plaintiff. Montgomery appraised the property at *703 $9,757.50. He found the store building not worth the expense of its repair. Teague valued the building at $3,000.00 and the land at $700.00 per acre, or $12,100.00 for the whole. The appraisals of these witnesses were based primarily upon comparable sales of property in or near the vicinity of the subject property, some of which, located on Highway 80 approximately three-fourths of a mile distant therefrom, brought only $457.00 per acre.
To ascertain whether there is lesion beyond moiety in the sale of immovable property, the immovable must be appraised according to the state in which it was at the time of the contract and the value which it had at the time of the sale. LSA-C.C. Arts. 1870 and 2590.
The rule is likewise well established that the burden of proving lesion is on the party asserting it, and that he must establish it by strong and convincing proof. Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956); Foos v. Creaghan, 226 La. 619, 76 So.2d 907 (1954). Speculative values are not to be considered in resolving the question of whether or not lesion exists. Armwood v. Kennedy, supra; White v. Bergstedt, 164 La. 993, 115 So. 59 (1927); Fernandez v. Wilkinson, 158 La. 137, 103 So. 537 (1925).
The contention that the market value of property must be determined by the highest and best use in which the land may be placed, as in expropriation suits, has been rejected as inapplicable to the rescission of sales on the ground of lesion. Armwood v. Kennedy, supra.
Lastly, but for the first time in brief before this court, defendant contends that plaintiff's remedy is the return of the deposit made in connection with the execution of the contract of sale. While we shall pretermit any discussion as to whether this defense is properly before us, we find no merit in the contention.
Reliance is, however, placed by defendant upon the provisions of LSA-C.C. Art. 2463, which recite:
"But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."
Thus, it is contended that the $500.-00 paid to apply on the purchase price of the property was earnest money. We are constrained to hold, however, that the provisions of this article are without application inasmuch as the deposit cannot be considered as earnest money, for, as heretofore noted, either party to the contract of sale had the right to specific performance, under the express wording of the contract, in the event of failure by the other to perform.
Under a provision that:
"`In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance,'"
the Supreme Court held in Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118, 127 (1955), that the parties to the contract did not intend the deposit as earnest. There it was pointed out that the deposit was not given for the purpose of securing to the parties the privilege of withdrawing from the contract, for neither was free to withdraw.
In the Ducuy case, as here, the parties specifically reserved to themselves the right to demand specific performance, at their option. The parties, in the cited case, had contracted in clear and explicit language that led to no absurd consequences and, as there was no suggestion that it was contrary to good morals or public policy, their agreement, it was held, was the law between them and the court was bound to give legal effect thereto. Such is the situation here.
*704 For the reasons assigned, we find no error in the judgment appealed and it is accordingly affirmed at defendant-appellant's costs.
Affirmed.