FRUGÉ, Judge.
This is a suit for specific performance of an option to purchase contained in a contract of lease.
On May 20, 1957, the landowner, Mrs. Meline Moore, defendant herein, executed a lease in favor of J. N. Fletcher and P. T. Chelette on the following described property located in Grant Parish, Louisiana, to wit:
The Northeast Quarter of the Northeast Quarter (NE (4 of NE 14) of Section Thirty-three (33), Township Eight (8) North, Range Three (3) West, also known as Lot One (1) of the NE J4 of Section 33, Township 8 North, Range 3 West, together with all improvements and appurtenances thereto belonging.
which lease was for a period of ten years from April 1, 1957 through March 31, 1967, and in addition to the lease obligations, contained the following:
“ * * * [I]n addition thereto, for the terms and conditions and consideration to be hereinafter expressed, granting unto Lessee after the primary term of this said lease, the exclusive right, privilege or option to purchase the property here-inabove described at the sum of Fifty and no/100 ($50.00) Dollars per acre, cash, provided, however, that the Lessee shall give written notice of Lessee’s desire to exercise said option within thirty (30) days prior to the expiration of the primary term hereof by registered mail.”
On October 31, 1962, P. T. Chelette assigned to J. N. Fletcher all of his rights under the lease and option. Plaintiff, J. N. Fletcher, made timely tender and demand upon defendant to execute a deed to the property at the expiration of the ten year lease. Defendant refused, and the present suit was filed seeking specific performance of the obligation of defendant to convey the tract of land to the plaintiff for the sum of $50.00 per acre, as per the option.
Defendant denied the allegations of plaintiff’s petition and assuming the position of plaintiff in reconvention, alleged that the lease option was obtained by mistake and error on her part and through misrepresentations and fraud on plaintiff’s part, and should, therefore, be rescinded. In the alternative, defendant pleaded lesion beyond moiety, and for that reason pleaded for the rescission and cancellation of the alleged option.
The lower court found that Mrs. Moore was aware of the contents of the document that she had signed and for that reason ruled for plaintiff. As to the allegations of lesion by the defendant, the court ruled that competent evidence had been received so as to prove that the price stated in the option contract was lesionary. From this decision, the plaintiffs have appealed.
This appeal presents three major issues for this court to decide as regards the lower court’s judgment. They are:
(1) Whether there was fraud or mispre-sentation on the part of plaintiff so as to absolve Mrs. Moore from her obligations of the lease option contract.
(2) Whether the price provided for in the option was lesionary.
(3) The issue of prescription.
As to each of these, we shall consider them separately.
I — FRAUD
The evidence shows that the defendant, Mrs. Meline Moore, is a semi-illiterate white woman, approximately 65 years of age. She testified that she went to the second grade and there was considerable testimony that she was unable to read or write. She testified that she did not under *665 stand she was granting an option, but thought she was only signing a lease on her property. This assertion on her part was given added support by the testimony of one of the grantees, Mr. Pete Chelette, who testified that he did not know that he and plaintiff were getting the right to buy the property when the instrument was executed. He also testified that at the time the lease was executed, Mrs. Moore stated that she would lease the property, but that she did not want to sell it.
The plaintiff, J. N. Fletcher, offered evidence to the effect that Mrs. Moore did know what she was doing at the time she executed the contract. The evidence offered by the plaintiff consisted of the testimony of Mr. W. T. McCain, a prominent attorney and notary in Colfax, before whom the document was executed. Mr. McCain knew Mrs. Moore and testified he read the document to Mrs. Moore and explained it to her in detail.
The lower court ruled that were it not for the testimony of Mr. McCain, it would have ruled that Mrs. Moore did not realize what she was signing and had no intention of granting an option to sell her land. In this connection, it was well established that Mr. Chelette, a party to the 1957 transaction, as well, as in 1962 as assignor of his rights under the lease and option, knew nothing about the option until this suit was filed.
However, considering the testimony of Mr. McCain, this court feels constrained, as did the lower court, to hold that Mrs. Moore was fully advised as to the contents of the instrument, and that she freely signed it. As such, she is bound by the contract, although we, as the lower court, feel that she did not understand the full import of her actions.
II — LESION
“Lesion” has been defined as the injury suffered by one who does not receive full equivalent for what he gives in a commutative contract. See L.S.A.—C.C. Art. 1860. In matters of sales of immovable properties, the vendor may be relieved if the price given is less than one-half of the value of the property sold. L.S.A.—C.C. Art. 1861(2).
The application of these principles is dependent upon a determination of the value of the property at the time the contract of option was entered into. L.S.A.—C.C. Art. 2590. Such determination is a factual matter to be resolved from the record as made up on the trial of the case.
To ascertain whether there is lesion beyond moiety in the sale of immovable property, the movable must be appraised according to the state in which it was at the time of the contract and the value which it had at the time the option was granted. L.S.A.—C.C. Art. 2590.
It is without doubt that the burden of proving lesion is on the party asserting it, and that he must establish it by strong and convincing proof. Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956); Foos v. Creaghan, 226 La. 619, 76 So.2d 907 (1954); Crow v. Monsell, 200 So.2d 700 (La.App.2d Cir. 1967), writ refused. Speculative values are not to be considered in resolving the question of whether or not lesion exists. Armwood v. Kennedy, supra; White v. Bergstedt, 164 La. 993, 115 So. 59 (1927); Fernandez v. Wilkinson, 158 La. 137, 103 So. 537 (1925); Crow v. Monsell, supra.
Defendant’s contention is simply that the property is worth some eight thousand dollars, and that under the terms of the contract she was to receive fifty dollars per acre, total acreage being some 33.54 acres, or only one thousand six hundred seventy-seven dollars[1] a price which allows vendor to invoke the articles on lesion.
Plaintiff’s contention is that there has been no competent admissible evidence by which a value of more than fifty dollars *666 per acre can be established. He argues very strongly that the lower court committed error, when by its wording, it apparently rested its decision solely upon the testimony of a Mr. Dale, who testified as to an offer of purchase he made in 1956 or 1957 to the defendant for eight thousand dollars.
Plaintiff further alleges that the expert witness in the case, a Mr. Gehr, based his appraisal of the property of eight thousand dollars, on the “highest and best use” of the property, which he claims is an evaluation method unallowable in lesion cases.
As to plaintiff’s complaints about the competency of the evidence offered by defendant in valuation of the property, we shall take each separately.
(1) Offer to Purchase—In Louisiana, offers to purchase property, even though found to be bona fide, are generally inadmissible as evidence of the market value because they are “inherently unreliable” being susceptible to fabrication. See, Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955); Central Louisiana Electric Company v. Gamburg, 200 So.2d 733 (La.App.3d Cir. 1967).
It is the opinion of this court, as was the belief of the lower court, that the testimony of Mr. Dale, was truthful and bona fide, but we must exclude it for the reasons previously given. Were there to be no other testimony than that of Mr. Dale, this court would probably be forced to rule for plaintiff on the issue of lesion.
(2) The testimony of the expert — It is plaintiff’s complaint, that Mr. Gehr, the expert based his evaluation strictly upon the “highest and best use”, which defendant claims is not allowable in a lesion case.
In this connection, plaintiff relies heavily upon the decision in Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956), which defendant argues establishes a rule in lesion cases different from that applicable in expropriation cases. Defendant contends that the Armwood case, supra, held that market value according to highest and best use is the measure of value only in expropriation cases, and in matters involving lesion, market value must be determined solely by the use of the property at the time of the sale or in this instance at the time of the granting of the option, rather than the highest and best use.
This court feels that appellant’s statement that Mr. Gehr’s opinion is based solely on the highest and best use of unimproved land is a misinterpretation of the testimony of Mr. Gehr.
In the first place, Mr. Gehr’s appraisal is based on a complete review of raw land sales and the value of property located on the “lake front” and a few acres back from the lake which he designated as “back property”. This witness specifically said he did not take into consideration the value of the commercial fishing camp, and that potential commercial business, but did admit that the highest and best use of any property is a proper factor to be considered along with others in valuing what is the proper market value of a piece of property.
Although Mr. Gehr did rely on the “highest and best” use only as one element in his total evaluation, we are faced with the question of whether this limited use of the method was proper.
We are in agreement with the conclusion reached by our brothers of the First Circuit in Martin v. Mays, La.App., 127 So.2d 77, at page 81, cert. denied April 24, 1961, and particularly the summary of their holding:
“ * * * We conclude the net effect of Armwood v. Kennedy to be that plaintiff in a lesion action is not barred from proof of a higher and better than actual use at the time of sale but that such evidence will be considered in the light of the state of the property at the time of sale together with all other attending circumstances affecting fair market value »
*667 Upon the reasoning expressed by this case, we feel that Mr. Gehr’s use of the element of highest and best use in his evaluation was not erroneous.
The problem always seems to be to try to prevent vague speculation, but in expropriation cases it has been found that the “highest and best use” method is most likely to produce a determination of the market value of the property at the time of the taking. Why such a method is inapplicable when seeking to determine evaluation for other purposes would appear to be somewhat questionable. The market value of a piece of real estate should be the same in either type of case. Simply because property is not put to a use which yields the most return is no reason to conclude that the value to the seller is thereby diminished.
Thus the standard for determining the value of the property involved in an action for lesion is the “fair market value” meaning the value arrived at as between a willing buyer and a willing seller, neither of whom is under any compulsion to buy or sell. Martin v. Mays, supra, and Henderson v. Dyer, La.App., 68 So.2d 623, and cases cited therein.
It is the ruling of this court that there is sufficient testimony in the record, properly admitted, to show that the actual value of the property in question was eight thousand dollars, an amount far above the minimum necessary to find the contract price lesion-ary. For this reason the defendant is released from her obligations under the contract in regard to the option to buy.
Ill — PRESCRIPTION.
Plaintiff filed a plea of prescription of four years under Article 2595 of the Revised Civil Code which reads as follows:
“Actions for recission [rescission] of sales on account of lesion beyond moiety must be commenced within four years. These four years, with respect to minors, begin only from the day they become of age. With respect to persons of full age, they begin from the day of the sale.” (Emphasis ours.)
It is the contention of the plaintiff that the prescriptive period begins to run from the date of the option and not from the date on which the act would be executed. As authority for this statement, he cites L.S.A.—C.C. Art. 1876, which reads as follows:
“Actions for lesion are limited to four years, to date from the time of the contract between the persons of full age, and from the age of majority in contracts of minors.” (Emphasis supplied.)
The lower court in its well-reasoned opinion answered this contention in wording which we adopt as our own:
“ * * * The answer lies in the express wording of the act which states that actions for rescission of sales on account of lesion beyond moiety must be commenced within four years to ‘begin from the day of the sale’. An option can in no sense be considered a sale and, therefore, any prescriptive period could only begin from the date upon which an actual act of sale was passed. The defendant having refused to execute an act of sale in this case is within her rights in resisting the demands of plaintiff and has the right to rescind the option on the ground of lesion beyond moiety.”
Plaintiff would have this court believe that by establishing that the proper interpretation of the Civil Code is that the prescription should run four years from the date of the sale in an option, a question evidently never before answered by a court in this state, we would create problems in that some lease-option to buy contracts extend for a term of fifty years or longer. In these cases this holding would create problems in that it would be hard to find someone who would be able to value the property as of the time of the option.
Although we recognize that this interpretation might cause some problems we can *668 do naught but follow the express wording of the statute.
Prescription not having run, defendant was timely in her contest of the option clause, and as per the previous findings, she is released from her obligations in the contract.
Having decided that the decision of the lower court on lesion and prescription was well based, and that there was no manifest error, we hereby affirm this decision in favor of the defendant-plaintiff in recon-vention. Costs of this appeal to be paid by plaintiff-appellant.
Affirmed.

. The record shows that plaintiff tendered $2,000 in payment for the 33.54 acres, which payment was refused.