WILLIAMS, Judge.
On March 17, 1964, plaintiff, Mrs. Adrienne Witvliet Whittington, and the defendant, John Paul Whittington, were judicially separated. On the same date plaintiff and defendant entered into a partition agreement. As a result of this agreement plaintiff received certain movables consisting of household furniture, a savings account of $110, a 1960 Oldsmobile and all of the minerals owned (a one-third interest) *195 by the former community existing between plaintiff and defendant under a 200 acre tract of land in Caddo Parish, Louisiana. The defendant received title to the 20^ acres of land and improvements, together with all livestock and farm equipment. He agreed to pay all debts of the community.
More than four years later plaintiff learned through her son, Michael, that defendant was negotiating a sale of the 200 acres of land for $200,000. Subsequently, on September 28, 1968 this suit was filed by plaintiff to rescind and declare null the above partition agreement. From an adverse judgment plaintiff has appealed.
Plaintiff seeks to have the partition of the community property rescinded for the following reasons: first, that plaintiff entered into the partition agreement through error of fact and law and was forced into the agreement as a result of intimidation, threats and inducements by defendant; and second, that plaintiff is entitled to have the partition set aside because of lesion beyond a one-fourth part of the true value of the property.
Plaintiff and defendant were married in 1939. They had a son, Michael, who assisted defendant in the farming operations until a few months before the parents separated in January 1964. Defendant was primarily a hog farmer and customer buyer of hogs. Generally he would buy hogs, put them in feed lots, and when ready for market sell them to local auction barns or packing houses.
In 1959 plaintiff and defendant built a home on the 200 acres of land that had been purchased in 1956. This land was used by defendant for a cattle and hog farm. The inventory of hogs on hand would vary from 250 to over 1300 head.
The sea of matrimony between plaintiff and defendant was at times very rough. There had been one other separation suit filed before the final separation in January, 1964. By this time problems concerning the financial affairs of the defendant became acute. In effect he was unable to “make ends meet”. In order to continue his buying, selling and raising hogs it was necessary for him to borrow large sums of money from the Shreveport Production Credit Association. In addition to the sums borrowed he was heavily indebted to livestock auction companies and other creditors. Defendant was unable to pay his current bills from his operations, and, with full knowledge by plaintiff, sold some of his hogs which were mortgaged to meet living expenses. Plaintiff was the bookkeeper of the family and unusually well informed concerning their financial condition. She suffered harassment from continued calls from unpaid creditors which brought about or magnified the differences between plaintiff and defendant and led to the final separation.
Plaintiff and her son Michael, on more than one occasion, sold some of the hogs in the son’s name and used these funds for their needs. These actions were not always known to defendant. Plaintiff stated she kept three sets of books: one showing what animals they actually had; another showing what they were supposed to have, and a third for tax purposes. (Tr. p. 108).
Causes for rescission of a partition are set forth in LSA-C.C. art. 1397 as follows:
“Partitions made, even with persons of full age, may be rescinded, like all other covenants, for radical vices, such as violence, fraud or error.”
Plaintiff stated that in 1950 the defendant struck her and that just before she left him in 1964 he threatened to do her bodily harm. Such threats were denied. Plaintiff’s proof as to coercion or violence by defendant was not convincing to the trial court nor does it merit belief here.
Prior to plaintiff’s leaving the defendant in January, 1964, she stated they sat down and discussed the property settlement; that she knew the existing financial conditions of the community and that on the basis of this knowledge the pertinent parts of the *196 partition agreement were reached. Plaintiffs knowledge of the financial condition of the community was comparable to that of defendant’s. There is no evidence to show any misrepresentation or concealment by defendant of any debt or asset of the community from plaintiff.
Plaintiff, in addition to being a housewife, was an active partner in the community. She was better educated than defendant and equally experienced in their business and associated matters. It was plaintiff who furnished the data to her counsel to prepare the partition of the community estate on March 17, 1964. It is our opinion she had all pertinent facts regarding the community assets and liabilities, and there are no grounds for finding plaintiff entered into this partition under an error of fact. The obligations of the husband as a fiduciary, as pronounced in the case of Pitre v. Pitre, 247 La. 594, 172 So.2d 693 (1965), were not violated by defendant. Plaintiff further contends that she entered into the agreement under an error of law. Her testimony is:
“Q At the time you executed that agreement were you under the belief that it was final and that there wasn’t anything you could do about it in the future ?
“A Well, I went ahead and agreed to that because I had been told by my attorney that I had ten years to get my part if the place was sold. I found out later that I didn’t have but maybe five years if I wanted to do anything.”
Her attorney, who prepared the agreement, denies this. In order to invalidate an agreement such as this because of error of law, plaintiff has the burden of proof to bring this within the requirements of LSA-C.C. 1846. This she has failed to do.
Plaintiff further seeks to have this partition rescinded on the ground of lesion. Lesion is defined as the “injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract.” LSA-C.C. art. 1860. Partitions may be rescinded for lesion. LSA-C.C. art. 1398 provides:
“They may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the recission, that such lesion be of more than one-fourth part of the true value of the property.”
In determining true value our Civil Code provides in LSA-C.C. art. 1870:
“When lesion is alleged to invalidate a partition or sale, the party alleging it must first prove the value of the property sold, in the state in which it was at the time of the contract. * * *”
“Art. 1871. In all questions of lesion the value of that which was the subject of the contract at the time of making it, is the rule by which the lesion is to be ascertained. Even in the case of minors, changes in value by subsequent events are not to affect the contract.”
Plaintiff retained a highly respected member of the Shreveport Bar as her attorney who testified that he received all the data about the proposed settlement from plaintiff. He had represented her and other members of her family for over 20 years. His investigation into the affairs of the community, which included a check of the public records, information from Retail Merchants Association and data from plaintiff, led him to recommend that it was to her interest to go through with the property settlement. He testified he found the community heavily indebted; that plaintiff and defendant were living in “a kind of hand to mouth thing”; that plaintiff had told him the defendant “* * * iad to slip out some of the mortgaged property and sell it to live along, and that she had been harassed with debts; she wanted to get loose from him and this was the agreement.”
*197 Plaintiff had two expert witnesses who testified as to the value of the property as of the date of the act of partition: Clarence D. Stennett and Lawrence L. May, both of whom came up with the identical value of $140,000. Their appraisals were based upon the possible development of the land into a residential subdivision of small acreage lots and its proximity to the proposed Interstate 20 located 3 or 4 miles from the land. These appraisers did not consider the land as farm land. Defendant likewise had two expert witnesses: O. L. Jordan and Frank Grigsby, realtors and residents of Shreveport and for many years familiar with property similar to that herein involved. Jordan appraised the land and improvements at a total of $49,750. Grigsby appraised only the land for a total of $32,350. The improvements were admitted by all to have a value of $20,000. Using comparable sales in the vicinity, the appraisals of these witnesses were based on the use of the land as farm land at the date of the partition.
To ascertain whether there is lesion beyond one-fourth part in an act of partition of immovable property, the immovable must be appraised according to the state in which it was at the time of the contract (here a hog farm) and the value which it had at the time of partition. LSA-C.C. arts. 1870 and 2590.
In the case of Crow v. Monsell, 200 So.2d 700 (La.App.2d Cir. 1967) this court stated:
“The rule is likewise well established that the burden of proving lesion is on the party asserting it, and that he must establish it by strong and convincing proof. Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956); * * * Speculative values are not to be considered in resolving the question of whether or not lesion exists. * * *” [200 So.2d 700, 703]
The values that are acceptable must therefore be those of defendant’s experts. The trial court found that plaintiff had admitted some $56,000 in debts owed by the community. There is also evidence by defendant of several thousands more.
Since the plaintiff has not presented strong and conclusive evidence in support of her claim of lesion, she is not entitled to the relief sought.
For the reasons assigned, we find no error in the judgment from which plaintiff appealed, and it is accordingly affirmed at plaintiff-appellant’s cost.
Affirmed.