470 So.2d 574 (1985)
Glen Ray DUNAWAY
v.
Donald WOODS, Nedra Woods, Robert J. Dumestie and Nancye Dumestie.
No. CA 84 1003.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*575 William J. Knight, Franklinton, for plaintiff and appellee Glen Ray Dunaway.
Jane M. Gisevius, New Orleans, for defendant and appellant Robert J. Dumestie and Nancye Dumestie.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a default judgment rendered in favor of the plaintiff-appellee, Glen Ray Dunaway, and against defendants *576 Nedra Woods,[1] Robert J. Dumestie and Nancye Dumestie.[2]
On May 7, 1984, the trial court confirmed the preliminary default rendered on April 30, 1984. In its default judgment, the court ordered specific performance by the Dumesties on an "Agreement to Purchase" dated July 1, 1983,[3] for immovable property owned by the plaintiff, or in the alternative, $56,500 plus legal interest and costs. Defendants Robert J. and Nancye Dumestie lodged a timely appeal. We affirm in part, reverse in part.
At the preliminary default, two of plaintiff's sons, Wilton Dunaway and Glen Edward Dunaway, testified that the plaintiff had been interdicted on August 26, 1982, and that Wilton had been made curator and Glen Edward had been appointed undercurator. Both Wilton and Glen testified that on July 1, 1983, as representatives of the plaintiff, they had signed an agreement to sell the plaintiff's movable property located at 637 Avenue J in Bogalusa, Louisiana. The other parties to the agreement were the defendants, Nancye and Robert J. Dumestie. Wilton testified that Donald and Nedra Woods were living in the house at the time the Dumesties executed the purchase agreement. Glen testified that the purchase agreement was the one signed by the Dumesties. According to the agreement introduced into evidence, the purchase was to be a cash sale for $56,500, with the seller (plaintiff) to refund all monies paid in rental and deposit to Donald and Nedra Woods at the act of sale. The agreement further provided that the act of sale was to be passed on or before September 1, 1983, before the Dumesties' notary, and that either the purchaser or seller could demand specific performance. The act of sale was never passed.
On September 15, 1983, plaintiff's attorneys wrote to the Woods requesting specific performance from Donald and Nedra Woods in regard to the purchase agreement signed by the Dumesties. On March 2, 1984, the plaintiff filed suit for specific performance by Robert J. and Nancye Dumestie and for payment of a promissory note by Donald and Nedra Woods executed in the amount of $1,891.32 and payable on demand. The citations for this suit were personally served on Nedra Woods and Nancye Dumestie. Robert Dumestie received notice of the suit by domicilliary service. On March 28, 1984, the trial judge signed a 30 day extension of time to plead filed on behalf of Nedra Woods. Again, on April 11, 1984, the trial judge signed another 30 day extension of time to plead filed on behalf of Nedra Woods. The plaintiff secured the preliminary default on April 30, 1984, and had the default confirmed on May 7, 1984.
The Dumesties argue that the default judgment was rendered against them prematurely in that the signed April 11 motion for a 30 day extension of time gave them until May 11 to file their answer. An order takes effect from the date on which it is signed, and the extension of time should run from that date. Any preliminary default and judgment rendered on confirmation of that default prior to the running of the extension of time would be absolutely null. LSA-C.C.P. art. 2001. Duclos v. United States Fire Insurance Company, 417 So.2d 40 (La.App. 1st Cir. 1982). However, in the instant case, both the March 28, 1984, and the April 11, 1984, extensions of time were granted in favor of the defendant, Nedra Woods, who was sued on a promissory note, not on the purchase agreement. There is absolutely no indication that Nancye and Robert J. Dumestie, the defendants on a completely different *577 cause of action, were included on either motion for an extension of time. A discretionary extension of time, allowed under LSA-C.C.P. art. 1004, to the defendant Woods does not extend the time that the Dumesties had for answering the petition; therefore, the allegation of prematurity as to the default judgment is without merit.
The Dumesties also contend that the plaintiff did not prove a prima facie case sufficient to allow the confirmation of a default judgment. For a trial court to confirm a judgment by default, the plaintiff must prove the essential elements of the claim by competent evidence with legal certainty, as fully as if each allegation was specifically denied by the defendant. Bonfouca Investment Corporation v. Eubanks, 347 So.2d 1277 (La.App. 1st Cir. 1977). A plaintiff who meets this burden has made out a prima facie case as required by LSA-C.C.P. art. 1702.
When reviewing a default judgment, this court is restricted to a determination of whether the record contains sufficient evidence to prove a prima facie case. Weaver v. Weaver, 438 So.2d 1149 (La.App. 1st Cir.1983).
The instant case is a suit for specific performance on an immovable property purchase agreement, which was offered into evidence. The contract in question was in the form of a private act without witnesses. In order to obtain a default judgment on a purchase agreement, the signatures of the parties must be proved. An inverse interpretation of the last sentence of LSA-C.C.P. art. 1702(B) indicates that there is a need to offer proof of signatures where something other than a negotiable instrument forms the basis of the demand. 347 So.2d at 1278.
The agreement was signed on behalf of the plaintiff by his two sons, with the notation on the agreement, "for Glen R. Dunaway as approved by court order dated 8/26/82." Both sons testified that the signatures were their own and that they acted pursuant to a court order appointing them to represent their father. In regard to the signatures of the defendants, Glen testified that the purchase agreement entered into the record was the one that the Dumesties had signed. Such testimony is sufficient to establish prima facie proof of the signatures.
In order to obtain the right of specific performance, the reciprocal consent of both parties as to the thing, the terms and the price must be shown. La.Civ.Code art. 2462. The testimony of the sons confirmed the consent of both parties to the agreement which set out the terms (cash sale), price ($56,500), and thing (house and all improvements located at 637 Avenue J, Bogalusa, La.).
Also, in order to enforce specific performance on a purchase agreement or contract to sell, the contract itself must provide that each party has the right to specific performance. This prevents the purchaser's deposit from being regarded as earnest money. La.Civ.Code art. 2463. See Crow v. Monsell, 200 So.2d 700 (La. App.2d Cir.1967), writ refused, 251 La. 226, 203 So.2d 558 (La.1967).
In the instant case, the language of the purchase agreement gave the right of specific performance to either party.
In the event the seller fails to comply with this agreement within the time specified or for any reason, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option.
In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.
A vendor seeking specific performance is not required to tender title prior to institution of the suit. Nelson v. Walker, 189 So.2d 54 (La.App.1st Cir.1966), writ granted, 249 La. 754, 190 So.2d 914 (La. *578 1966), modified on other grounds, 250 La. 545, 197 So.2d 619 (La.1967).
Both sons testified that they were at all times, ready, willing and able to sell the property to the Dumesties, and that the Dumesties never contacted them about completing the sale. Additionally, Glen testified that he contacted Mrs. Dumestie directly to no avail. Therefore, we feel that the testimonies of the Dunaways were sufficient to show compliance with requirements for specific performance and to establish a prima facie case for a default judgment as required by LSA-C.C.P. art. 1702.
The court in its judgment ordered specific performance on the contract; "or, alternatively, that there be judgment herein in favor of Glen Ray Dunaway and against the said Robert J. Dumestie and Nancye Dumestie in the full and true sum of Fifty-Six Thousand, Five Hundred and No/100 ($56,500.00) Dollars, together with legal interest thereon from date until paid, and all costs of this suit." In his petition, Dunaway prayed for $20,000 in damages in the alternative; however, no evidence of damages was ever offered. Therefore, any award for damages is specifically denied.
For the foregoing reasons, we affirm the default judgment of the trial court awarding specific performance on the purchase agreement, but reverse that part of the judgment which allows damages in the alternative. All costs of this appeal shall be borne by the defendant. The defendant's motion to remand is rendered moot by this opinion.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] No judgment was rendered against defendant Donald Woods. He was never served with a citation as provided for in LSA-C.C.P. art. 1201. Nedra Woods did not appeal the judgment against her on the $1,891.32 promissory note; therefore, she is not before the court.
[2] There is a question as to the spelling of the surname of the defendants Robert J. Dumestie and Nancye Dumestie. At other places in the record, the spelling is shown as Dumestre.
[3] The typed date and testimony indicate the date as July 1, 1983; the handwritten date at the bottom of the agreement shows July 15, 1983.