993 So.2d 725 (2008)
Bret BOUDREAUX and Brittany Boudreaux
v.
Scott A. VANKERKHOVE.
No. 2007 CA 2555.
Court of Appeal of Louisiana, First Circuit.
August 11, 2008.
*727 Valerie Briggs Bargas, Baton Rouge, LA, for Plaintiffs/Appellees Bret Boudreaux and Brittany Boudreaux.
John S. McLindon, Baton Rouge, LA, for Defendant/Appellant Scott A. Van Kerkhove.
*728 Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
A prospective purchaser of immovable property appeals a summary judgment granted in favor of the sellers ordering specific performance by the purchaser of obligations assumed in an "Agreement to Purchase and Sell" and a contempt order related to that judgment.

FACTS AND PROCEDURAL HISTORY
Scott A. Van Kerkhove agreed to purchase property and improvements located at municipal address 7512 Pine Bluff, Denham Springs, Louisiana from Bret P. Boudreaux and Brittany Boudreaux for $79,000.00 by an act of cash sale, as represented in an "Agreement to Purchase and Sell" dated June 19, 2006. The agreement provided that the sale was not subject to financing and that the act of sale would be executed at a closing held on or before September 19, 2006. On September 26, 2006, the Boudreauxs filed a "Petition to Enforce Agreement to Purchase and Sell," wherein they alleged that Mr. Van Kerkhove breached the "Agreement to Purchase and Sell" in bad faith and therefore sought specific performance of the agreement and all costs and attorney fees incurred for enforcing the agreement. The Boudreauxs further propounded discovery to Mr. Van Kerkhove in which they requested that Mr. Van Kerkhove admit or deny that (1) he signed the Agreement to Purchase and Sell and (2) he failed to purchase the property located at 7512 Pine Bluff in Denham Springs, Louisiana, by September 19, 2006. In response to the request for admissions, Mr. Van Kerkhove admitted that he signed the Agreement to Purchase and Sell and "that by September 19, 2006, [he] did not purchase the property located at 7512 Pine Bluff."
Thereafter, the Boudreauxs filed a motion for summary judgment to have Mr. Van Kerkhove "comply with the agreement to purchase and sell dated June 19, 2006." In support of the motion, the Boudreauxs attached a copy of their "Petition to Enforce Agreement to Purchase and Sell," the "Request for Admissions" propounded to Mr. Van Kerkhove, and the "Answers to Request for Admissions" submitted by Mr. Van Kerkhove. Following a hearing on the motion for summary judgment, the trial court signed a judgment on February 2, 2007, ordering Mr. Van Kerkhove "to go through an act of sale to purchase the property, which forms the basis of this suit, within fourteen (14) days of the date of the hearing on the Motion for Summary Judgment, January 4, 2007." The judgment further provided that the trial court would defer ruling on any monetary judgment "until such time that the defendant fails to comply with this judgment."
Pursuant to the summary judgment ruling, the parties scheduled a new closing date of January 19, 2007. However, prior to the date set for the closing, counsel for Mr. Van Kerkhove allegedly informed an agent of the title company that had been selected to perform the closing that Mr. Van Kerkhove would not attend the closing and that Mr. Van Kerkhove had no intention of purchasing the property. Consequently, on February 8, 2007, the Boudreauxs filed a "Motion for Contempt and Request for Expedited Hearing," wherein the Boudreauxs alleged that Mr. Van Kerkhove's failure to complete the sale constituted an act of constructive contempt pursuant to La. C.C.P. art. 224. The Boudreauxs further prayed that the trial court "issue judgment in the full amount of the agreement to purchase ordering that title to the property at issue vest in the defendant when Plaintiffs have received all monies *729 due to them, including all costs and attorneys' fees associated with pursuing the judgment at issue."
A hearing on the Boudreauxs' motion for contempt was held on April 9, 2007. Following the hearing, the trial court granted the Boudreauxs' motion for contempt and decreed that Mr. Van Kerkhove "be ordered to go through an Act of Sale to purchase the property which forms the basis of this suit within thirty (30) days of the date of the hearing on the Motion for Contempt" in a judgment signed May 7, 2007.
On May 9, 2007, a final hearing was held in this matter at which the trial court again considered the Motion for Contempt and further considered the Boudreauxs' April 24, 2007 "Motion to Reurge Prayer for Relief Pursuant to Motion for Summary Judgment Previously Filed." In the June 1, 2007 judgment resulting from the May 9, 2007 hearing, the trial court rendered the following decrees: (1) again granted the motion for contempt and ordered Mr. Van Kerkhove to pay the monthly interest on a loan obtained by the Boudreauxs to purchase the property at issue; (2) granted the motion to reurge the prayer for relief contained in the summary judgment previously filed; (3) awarded the Boudreauxs a money judgment in the amount $83,579.84, including costs associated with the motions for summary judgment and contempt; and (4) ordered that title to the property at issue vest with Mr. Van Kerkhove upon full payment of the money judgment. Mr. Van Kerkhove now appeals.[2]

ASSIGNMENTS OF ERROR
Mr. Van Kerkhove seeks review of the trial court's judgment relative to the following alleged errors:
1. The Trial Court erred in granting the Motion for Summary Judgment in light of all the material issues of fact which were in dispute.
2. The Trial Court erred in its ruling on the "Motion for Contempt", [sic] ordering Mr. Van Kerkhove to pay interest on the underlying loan (which payment was ordered for his "contempt") and also rendering a money judgment against Mr. Van Kerkhove in the amount to $83,579.84.

STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Schwehm v. Jones, 03-0109, p. 4 (La.App. 1st Cir.2/23/04), 872 So.2d 1140, 1143. The motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230-231. An appellate court reviews the district court's decision to grant or deny a motion for *730 summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199.
On a motion for summary judgment, the initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party must only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to satisfy its evidentiary burden of proof at trial; if the nonmoving party fails to do so, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); Schwehm, 03-0109 at 5, 872 So.2d at 1144.

DISCUSSION
In his first assignment of error, Mr. Van Kerkhove contends that there exist several genuine issues of material fact that should have precluded the granting of summary judgment by the trial court.
In seeking summary judgment, the Boudreauxs attached to their motion for summary judgment the following documents: a copy of the petition; a copy of the request for admissions issued to Mr. Van Kerkhove, to which a copy of the agreement to purchase and sell[3] was attached; a copy of Mr. Van Kerkhove's answers to the request for admissions; and an affidavit executed by the Boudreauxs wherein they affirmed that as of the date of the affidavit, they had not been contacted by Mr. Van Kerkhove to schedule a date for the closing. The Boudreauxs asserted that the terms of the purchase agreement provide that Mr. Van Kerkhove was to purchase the property located at 7512 Pine Bluff from the Boudreauxs for $79,000 by September 19, 2006. The purchase agreement also provided that either party was entitled to seek specific performance of the contract if either failed to comply with the terms of the contract within the time period specified. Additionally, in his answers to the request for admissions, Mr. Van Kerkhove admitted that he signed the purchase agreement and that by September 19, 2006, he did not purchase the property at issue. Therefore, the Boudreauxs asserted that based on the evidence presented, they were entitled to specific performance of the purchase agreement.
In opposing the motion for summary judgment, Mr. Van Kerkhove alleged that there is a discrepancy in the contract that raises a genuine issue of material fact as to whether a binding contract was perfected. Specifically, Mr. Van Kerkhove claims that because the Boudreauxs signed and dated the agreement to purchase and sell, indicating that they had read, understood, and accepted the offer, prior to Mr. Van Kerkhove signing and dating the agreement to indicate that he had read and understood the terms of the offer, the validity of the agreement is questionable. We find no merit in this assertion.
*731 Generally, a bilateral promise of sale or contract to sell that sets forth the thing, the price, and meets the formal requirements of the sale it contemplates, entitles either party to the agreement to demand specific performance upon compliance with the obligations expressed in the agreement. La. C.C. art. 2623; see also Stumpf v. Richardson, 99-415, pp. 3-4 (La.App. 5th Cir.11/30/99), 748 So.2d 1225, 1227. In order to obtain the right of specific performance, the reciprocal consent of both parties as to the thing, the terms and the price must be shown and the contract must provide that each party has the right to demand specific performance. See Dunaway v. Woods, 470 So.2d 574, 577 (La.App. 1st Cir.1985).
Whereas the consent of the parties is established through offer and acceptance, such a process is not a ritual that should be regarded as indispensable for the formation of a valid contract. Saul Litvinoff, Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations, 47 La. L.Rev. 699, 701-702 (1987). Rather, as in this case, to the extent that the consent is expressed in writing, such offer and acceptance may be established under circumstances clearly indicative of consent.[4]See La, C.C. art. 1927, 1839, and 2440. The signatures of the parties in the written agreement to purchase and sell is evidence of their consent to the contract and is sufficient to establish that there was a concurrence of wills absent any vice of the parties' consent thereto. See Spiers v. Seal, 426 So.2d 631, 634 (La.App. 1st Cir. 1982), writs denied, 432 So.2d 269 & 270 and 433 So.2d 150 (La. 1983). Accordingly, we find that the evidence presented was sufficient to establish that a contract was perfected between the parties.
Nevertheless, Mr. Van Kerkhove further asserts that genuine issues of material fact remain as to whether the Boudreauxs complied with the terms of the contract such that they are entitled to seek specific performance. Particularly, Mr. Van Kerkhove points out that the Boudreauxs failed to present proof that they had selected a closing agent before which to pass the act of sale on or before September 19, 2006, or that they possessed a wood-destroying insect report that had been issued within 30 days prior to the date set for the closing to present at the closing. In response, the Boudreauxs point out that Mr. Van Kerkhove consistently maintained that for financial reasons he was unable to participate in the closing to purchase the property and that he refused to contact the Boudreauxs to set a date for the closing, as stated in their affidavit.
Contracts have the effect of law as between the parties. La. C.C. art. 1983. Accordingly, reviewing the purchase agreement and evidence submitted by the Boudreauxs, it would appear that the Boudreauxs failed to establish a prima facie case for entitlement to specific performance. The agreement to purchase and sell expressly provides that the "act of sale shall be passed before a closing agent selected by ... SELLER ON September 19, 2006 or before with mutual agreement of *732 the parties." Hence, Mr. Van Kerkhove's concurrence in the date set for the closing was only required if the parties selected a date before September 19, 2006. Regardless of Mr. Van Kerkhove's unwillingness to set a closing date before September 19, 2006, pursuant to the terms of the agreement to purchase and sell, the Boudreauxs' obligations under the agreement were to select a closing agent by September 19, 2006 (or before that date if Mr. Van Kerkhove concurred in setting an earlier date), and to obtain a wood-destroying insect report issued at least 30 days prior to the date of the closing.
As the plaintiffs in the underlying action and the movants on the motion for summary judgment, the Boudreauxs had the burden of establishing that they were entitled to judgment as a matter of law. In addition to showing that the contract provides each party the right to demand specific performance, in order to meet their burden of proof, the Boudreauxs had to also present evidence establishing that they had fulfilled their obligations under the contract. See Deleon v. WSIS, Inc., 31,602, p. 11 (La.App. 2d Cir.2/26/99), 728 So.2d 1046, 1051.
Nowhere in the pleadings, i.e. the petition or the motion for summary judgment, do the Boudreauxs assert that a closing agent had been selected by them, that a wood-destroying insect report had been obtained, or simply that they had fulfilled or were prepared to fulfill the obligations required of them under the agreement to purchase and sell. Nor did the Boudreauxs present any evidence (by way of attachment to an affidavit or deposition as would be proper for summary judgment) to establish their compliance with the terms of the agreement to purchase and sell or to establish a prior breach of the agreement relieving them of the responsibility for compliance. Cf. Payne v. Hurwitz, 07-0081, pp. 11-12 (La.App. 1st Cir.1/16/08), 978 So.2d 1000, 1007; Clement v. Graves, 04-1831, p. 13 (La.App. 1st Cir.9/28/05), 924 So.2d 196, 204.
Accordingly, we find merit in Mr. Van Kerkhove's assertion that the trial court erred in granting the motion for summary judgment in favor of the Boudreauxs as there existed genuine issues of material fact as to whether the Boudreauxs had sufficiently complied with the terms of the agreement to purchase and sell to establish their entitlement to summary judgment. Furthermore, based on this finding, any relief the trial court granted the Boudreauxs pursuant to granting the summary judgment is reversed.
In his second assignment of error, Mr. Van Kerkhove contends that the trial court erred in ordering him to pay interest on a loan the Boudreauxs had obtained to purchase the property subject to the agreement to purchase and sell as punishment for finding him in contempt of the court's February 2, 2007 summary judgment decree. Although we have found the summary judgment decree on which the contempt judgment is premised invalid, we recognize that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect, the remedy is to apply for review, and absent a stay, to comply with the order pending review. Persons who make private determinations of the law and refuse to obey an order risk contempt even if the order is ultimately ruled incorrect. See Dauphine v. Carencro High School, 02-2005, pp. 12-14 (La.4/21/03), 843 So.2d 1096, 1106-1107; Nungesser v. Nungesser, 558 So.2d 695, 701 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990), abrogated in part on different grounds by Wascom v. Wascom, 96-0125 (La.4/18/97), 691 So.2d 678.
*733 In light of this principle, we find it proper to consider the merits of Mr. Van Kerkhove's arguments regarding the contempt judgment. There are two kinds of contempt punishable under Louisiana law: constructive or direct. La. C.C.P. art. 221. In this instance, Mr. Van Kerkhove is alleged to have committed constructive contempt based on his failure to comply with the February 2, 2007 summary judgment, which the Boudreauxs asserted constituted "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]" La. C.C.P. art. 224(2). Moreover, to find a person guilty of constructive contempt, it is necessary to find that he or she violated an order of the court intentionally, knowingly, and purposefully, without justifiable excuse. Lang v. Asten, Inc., 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order, and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion. Leger v. Leger, 00-0505, p. 3 (La.App. 1st Cir.5/11/01), 808 So.2d 632, 635.
The trial court initially found Mr. Van Kerkhove in contempt at the April 9, 2007 hearing on the Boudreauxs' motion for contempt, but deferred imposing punishment to allow Mr. Van Kerkhove an opportunity to purge himself of the contempt; however, by May 9, 2007, Mr. Van Kerkhove had not purged himself of the contempt.
At a hearing held on May 9, 2007, Mr. Van Kerkhove and his business partner testified regarding Mr. Van Kerkhove's ability to secure funds to purchase the property subject to the purchase agreement. Mr. Van Kerkhove's business partner, Jennifer Waddick, testified that the problem at issue was not Mr. Van Kerkhove's credit or personal debt, but the property. She explained that she was the part owner of a mortgage company, but she was unable to provide the type of loans that Mr. Van Kerkhove needed to purchase the property; however, she said she contacted at least four banks on Mr. Van Kerkhove's behalf to secure financing without success. She opined that the "property is not worth what he needs to get a loan ... to pay [the Boudreauxs] out." When asked to describe the property, Ms. Waddick said that she knew the property was located off of Range Avenue in Denham Springs and consisted of a two or three bedroom wood frame house that was cut in half, moved, and put back together on a lot measuring approximately three-fourths of an acre, but otherwise she declared she was not familiar with the property or its condition and admitted that she could not state exactly how much the property was worth.
Mr. Van Kerkhove testified that his debt was set in "disarray" because of a combination of his business deal with the Boudreauxs, some other property that was "tied up in litigation," and the construction of his home that appraised for around $700,000.00 when he closed on the home in October 2006. He testified that "conservatively [the] property with the house on it may be worth $40,000 and if we were forced today to pay the difference [between the $40,000 estimate and the amount sought by the Boudreauxs] it would be $40,000 and I simply do not have $40,000." He admitted that he had some equity in his home, "somewhere between $40,000.00 and $60,000.00," but because of his debt ratio, it was "impossible ... to go and get another mortgage of any sort right now on [his] home or any other property." When asked whether he had any documentary evidence to show that he went out to get a loan specifically to pay the debt represented in the agreement to purchase and sell, *734 Mr. Van Kerkhove responded, "I don't know that we do."
During the hearing, the trial court seemed skeptical regarding portions of the witnesses' testimony. Particularly, the trial court questioned how Ms. Waddick could get a loan for property with which she declared she was not familiar, and despite Ms. Waddick's testimony, the court further observed that three-fourths of an acre of land plus the home "wouldn't have to be worth much more to make it come up to the value listed in the contract." The trial court likewise questioned, in response to Mr. Van Kerkhove's testimony regarding the value of his home, "you are living in a $700,000 house and you can't raise $40,000?"
At the conclusion of the hearing, the trial court expressed the following findings in upholding the contempt decree:
As to the contempt, you know, the court has previously found this defendant to be in contempt of Judge Johnson's court order and I deferred action on that finding until today hoping that this additional time would allow you to make some progress in trying to resolve this financial situation, but it looks like absolutely no progress has been made is what it appears to the court and it does not appear that you have anything to offer which would lead the court to believe that you could resolve this in say another 30 or 60 or even 90 days, it doesn't look like anything is on the horizon.... I think justice and the law in this case demands that you suffer some consequences for being in contempt of the court's order. What I will do on that is order that you pay the interest as we discussed in chambers, that you pay the interest on this loan.
In light of the evidence presented, and being constrained by the applicable standard of review, we cannot say that the trial court abused its great discretion in finding Mr. Van Kerkhove in contempt of the February 2, 2007 summary judgment. Although not expressly stated, the trial court obviously did not believe Mr. Van Kerkhove had made reasonable efforts to obtain funding to fulfill his obligation to purchase the property. At trial, the trial court is charged with assessing the credibility of witnesses and, in so doing, is free to accept or reject, in whole or in part, the testimony of any witness. See Morrison v. Morrison, 97-0295, p. 5 (La.App. 1st Cir.9/19/97), 699 So.2d 1124, 1127. As such, the credibility finding by the trial court cannot be set aside by this court absent manifest error, and failing to find such error, we must affirm the credibility findings of the trial court and the contempt ruling based on those findings. Morris v, Morris, 04-676, p. 12 (La.App. 5th Cir.11/30/04), 889 So.2d 1048, 1055, writ denied, 04-3185 (La.3/11/05), 896 So.2d 68; Larsen v. Polk, 02-1104, p. 9 (La.App. 5th Cir.2/25/03), 841 So.2d 992, 997, writ denied, 03-0877 (La.4/25/03), 842 So.2d 412; Rosselli v. Rosselli, 352 So.2d 370, 370-371 (La.App. 4th Cir.1977).
Nevertheless, we find that the trial court erred in ordering Mr. Van Kerkhove to pay the interest on the Boudreauxs' loan. The punishment a court may impose upon a person adjudged guilty of contempt of court is provided in La. R.S. 13:4611. La. C.C.P. art. 227. According to La. R.S. 13:4611, a court may punish constructive contempt for failure to obey a court's order by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both. La. R.S. 13:4611(1)(d). Moreover, a contempt proceeding is designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Thus, any fine assessed must be payable to the court, since the assessment itself is to vindicate *735 the dignity of the court. Crosby v. Ogden, 03-1934, p. 4 (La.App. 4th Cir.11/10/04), 888 So.2d 1071, 1073; Brunet v. Magnolia Quarterboats, Inc., 97-187, p. 11 (La.App. 5th Cir.3/11/98), 711 So.2d 308, 313, writ denied, 98-0990 (La.5/29/98), 720 So.2d 343, cert denied sub nom Polaris Insurance Company, Ltd. v. Brunet, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999).
Accordingly, the portion of the June 1, 2007 judgment ordering Mr. Van Kerkhove to pay the monthly interest on the Boudreauxs' loan is reversed, and we will remand the contempt matter to the trial court to resentence Mr. Van Kerkhove, at its discretion, within the limitations imposed under La. R.S. 13:4611, See Ezernack v. Ezernack, 04-1584, p. 5 (La.App. 3d Cir.4/6/05), 899 So.2d 198, 201.

CONCLUSION
For the reasons expressed herein, we reverse the February 2, 2007 summary judgment rendered in favor of the Boudreauxs and reverse in part the June 1, 2007 judgment awarding the Boudreauxs a money judgment in the amount of $83,579.84 pursuant to the granting of the February 2, 2007 summary judgment. We affirm the May 7, 2007 contempt judgment, but reverse that portion of the June 1, 2007 ordering Mr. Van Kerkhove to "pay the monthly interest on loan number 42558121 held in the name of Bret Boudreaux and Brittany Boudreaux in favor of People's Bank of Louisiana." We remand this matter to the trial court for resentencing on the contempt judgment and for further proceedings in conformity with this opinion. All costs of this appeal are equally apportioned to the parties.
FEBRUARY 2, 2007 JUDGMENT REVERSED; MAY 7, 2007 CONTEMPT JUDGMENT AFFIRMED; JUNE 1, 2007 JUDGMENT REVERSED IN PART; CASE REMANDED.
HUGHES, J., concurs.
NOTES
[2] We observe that the June 1, 2007 judgment is a final, appealable judgment. In the appeal of that judgment, the appellant has assigned as error certain interlocutory judgments rendered by the trial court. Although only the June 1, 2007 judgment was appealed, in an unrestricted appeal taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. Thus, we will consider the interlocutory judgments in addition to the June 1, 2007 judgment in our review of this appeal. See Succession of Bell, 06-1710, p. 6 (La.App. 1 Cir. 6/8/07), 964 So.2d 1067, 1072.
[3] We note that the purchase agreement is not attached to an affidavit, nor is it sworn to or certified. However, both the Boudreauxs and Mr. Van Kerkhove offered identical copies of the purchase agreement into evidence, and neither party disputes its authenticity. Accordingly, this agreement is of sufficient evidentiary quality to be given weight on a motion for summary judgment. See Boland v. West Feliciana Parish Police Jury, 03-1297, p. 6 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 814, writ denied 04-2286 (La. 11/24/04), 888 So.2d 231,
[4] As further observed by Professor Litvinoff:

Thus, in matters of sale, the contract is perfect upon parties' consent of the thing and the price. No contract of sale may come into existence if offer and acceptance differ on the thing or the price. When those essential elements are agreed upon, however, a contract of sale is formed even in the absence of any provision concerning the time for payment, term of delivery, or any other stipulation regarded as nonessential.
47 La. L.Rev. at 737 (footnotes omitted).