PETTIGREW, J.
|2In the instant case, defendant/appellant, Dexter Hadnot, appeals a judgment rendered by the 21st Judicial District Court wherein the trial court found good cause was shown for denying him visitation, and denied Mr. Hadnot’s rule for contempt against plaintiff/appellee, Stella Mason. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Although never married to each other, Ms. Mason and Mr. Hadnot are the parents of one minor child, M.D.M., born July 28, 1995. In July 2006, Ms. Mason filed a rule for custody and visitation, seeking to be awarded sole custody of M.D.M., with Mr. Hadnot being awarded reasonable visitation. In a stipulated judgment rendered on September 18, 2006, and signed by the trial court on October 6, 2006, the parties were awarded joint custody of M.D.M. with Ms. Mason named as domiciliary parent.[1] Mr. Hadnot was awarded specific visitation for holidays and summer vacation and was ordered to pay child support in accordance with the child support guidelines. In response to cross-motions for contempt filed by the parties, a new stipulated judgment was rendered on January 22, 2007, and signed by the trial court on March 21, 2007, delineating with more specificity, among other things, Mr. Hadnot’s monthly visitation, his Christmas visitation, and the offset in his monthly child support obligation for June and July that he would receive while exercising his summer visitation with M.D.M.
Thereafter, in January 2008, after what Mr. Hadnot alleged was “willful noncompliance with the court order of custody/visitation, without a justifiable reason” by Ms. Mason, Mr. Hadnot filed a motion to reset custody/visitation and a motion for contempt. The matter was set for hearing on February 11, 2008, at which time the trial court heard from witnesses and considered documentary evidence. At the close of the hearing, the trial court found that Ms. Mason was not in contempt because she had reasonable grounds to keep M.D.M. from visiting with Mr. Hadnot. Thus, the trial court denied Mr. | .¡Hadnot’s rule for contempt. A judgment in accordance with the trial court’s findings was signed on March 10, 2008.
*258 It is from this judgment that Mr. Had-not has appealed, assigning the following specifications of error:
I. The trial court erred in not holding Stella Mason in contempt of court without a justifiable excuse and not ordering make up visitation for Defendant/Appellant.
II. The trial court abused its discretion in allowing her personal opinion regarding corporal punishment to influence the ruling and further by giving the Defendant/Appellant the ultimatum of no corporal punishment, or no visitation.
LAW AND ANALYSIS
Contempt of court is defined in La.Code Civ. P. art. 221 as “any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” There are two types of contempt. A direct contempt is defined in La.Code Civ. P. art. 222 as “one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.” A constructive contempt of court is defined in La.Code Civ. P. art. 224 as “any contempt other than a direct one.” In order to find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. Haydel v. Pellegrin, 2007-0922, pp. 4-5 (La.App. 1 Cir. 9/14/07), 970 So.2d 629, 632. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order, and the court’s decision should be reversed only when the appellate court discerns an abuse of that discretion. Bou-dreaux v. Vankerkhove, 2007-2555, pp. 10-11 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 733.
In this case, after hearing all of the testimony and considering the evidence, the trial court found that Ms. Mason had reasonable grounds to keep M.D.M. from visiting with Mr. Hadnot and that Ms. Mason was not in contempt of court. From our review of |4the record before us, we cannot determine that the trial court abused its vast discretion in so ruling.
According to the record, in early June 2007, M.D.M. was with her father for a weekend visit that was to precede her regular summer visitation. Ms. Mason testified that a month prior to the scheduled visit, she and Mr. Hadnot had discussed the issue of M.D.M.’s cell phone and the fact that M.D.M. had lied to him about bringing her cell phone with her during her previous visits with him. Mr. Hadnot told Ms. Mason that he was going to “chastise” M.D.M. by “whipping her behind.” Because of. MJD.M.’s age[2] and what Ms. Mason described as a stressful situation due to the custody arrangement, Ms. Mason implored Mr. Hadnot to use means other than spanking to punish M.D.M. However, as Ms. Mason explained, her pleas did not ultimately change Mr. Hadnot’s plans.
Ms. Mason indicated that she and Mr. Hadnot met on Friday evening at their regular exchange place in Lake Charles, Louisiana, where M.D.M. left with Mr. Hadnot for the weekend. It was not until early Saturday morning when M.D.M. called her that she became aware of the incident in question. According to Ms. Mason, M.D.M. stated, “It happened, Mommy.” M.D.M. continued, “He beat me like he said he would.” M.D.M. ex *259 plained that during the drive to Houston the previous night, her father had told her what was going to happen and asked her if she was scared. M.D.M. told her mother that she was anticipating it the entire drive, but that nothing happened that night when they arrived at her father’s home. Rather, she described being awakened the following morning by her father whipping her with a belt. M.D.M. stated that “it was hurting” and that she “kept asking him to stop.”
Ms. Mason testified that after hearing about the incident from M.D.M., she drove to Houston that day and spoke to the local authorities. According to Ms. Mason, they explained to her that it was not against the law for Mr. Hadnot to use corporal punishment to discipline M.D.M. and that if it was his weekend for visitation, unless Issocial services was involved, they could not go into the home to investigate. Thus, Ms. Mason returned home and did not see M.D.M. again until Sunday when it was time to pick her up. Ms. Mason described “dark, deep bruises on her ... thighs and on her bottom” and added that her “thumb was a little swollen.”
Ms. Mason brought M.D.M. to the St. Helena Sheriffs Department where M.D.M. was photographed and statements were taken from both Ms. Mason and M.D.M. Ms. Mason also phoned her family physician and was referred to Children’s Hospital where M.D.M. was examined and again photographed.[3] Ms. Mason also sought counseling for M.D.M., contacted the Office of Community Services (“OCS”) to report the alleged abuse by Mr. Hadnot, and terminated all contact between M.D.M. and her father.[4]
Mr. Hadnot testified that the reason he spanked M.D.M. during the visit in June was because she lied to him about having her cell phone with her during their visits in March, April, and May. He acknowledged striking M.D.M. 10 to 15 times with a belt. When asked if he noticed any injuries after the spanking, Mr. Hadnot testified as follows:
Actually, I got — I allowed my wife to see if there were any injuries on my child. And I — there were bruises on her butt. But there was no bruising on her butt to the point where she complained or if I thought she needed medical attention. No. I did not notice any [bruising] on her butt. We went swimming after that, by her request.
Teresa Lieber, accepted by the trial court as an expert in social work, testified concerning her treatment of M.D.M. Her impression of M.D.M. was that she was suffering from post-traumatic stress disorder, with multiple symptoms of anxiety and depression. Ms. Lieber’s initial recommendation was that M.D.M. continue with individual counseling and that she not have any contact with her father. After seven individual sessions with M.D.M., Ms. Lieber opined that M.D.M. was much improved. Although Ms. Lieber agreed that it was important that M.D.M. have a relationship with 1 Rher father, she reiterated to the trial court that M.D.M. was still fearful that another incident like the one in June 2007 would reoccur. In order to help alleviate M.D.M.’s fears and anxieties, Ms. Lieber opined that M.D.M. could begin *260 supervised visitation with her father. In the alternative, the trial court asked Mr. Hadnot if he would agree not to exercise any corporal punishment with M.D.M. during what the trial court termed the “initial period” so as to reassure M.D.M. and make her feel more comfortable about visiting with her father. Mr. Hadnot did not agree to these terms, stating “If my daughter needs to be spanked, she will be spanked.”
On appeal, Mr. Hadnot argues that the alleged fear from which M.D.M. suffered as a result of the June 2007 incident was not a justifiable excuse for Ms. Mason’s noncompliance with the trial court’s orders. He maintains that as M.D.M.’s parent, he had the right to use reasonable corporal punishment in disciplining his child. Mr. Hadnot added that he had been involved in the rearing of M.D.M. since she was an infant and that prior to this incident, he had only used corporal punishment on two occasions. Mr. Hadnot further alleges that the trial court abused its discretion in allowing personal opinions regarding corporal punishment to obstruct judicial duties and in giving him an ultimatum of either no corporal punishment or no visitation. We find no merit to any of Mr. Hadnot’s arguments on appeal.
In denying Mr. Hadnot’s rule for contempt, the trial court gave the following reasons:
THE COURT:
I find that Ms. Mason is not in contempt. She had reasonable grounds to keep her child from visiting her father. She had her child, who the counselor says is suffering from post-traumatic syndrome and also who is depressed. Now, she did say she is getting better and that she was a whole lot better off now that she has been going to counseling. But I find that she acted correctly when she kept the child from going for visitation with her father. So, I find there is no contempt.
[[Image here]]
MR. MCCORVEY: [COUNSEL FOR MR. HADNOT]
Well, Your Honor, a modification of the current custody award is not before you. But the issue of his visitation and my whole pleading is that it — the rule sought to stop his visitation from being interrupted. |7Now, basically, your ruling leaves in place what she’s been doing and has given no affect to your judgment that you signed in March of 2007, or your oral rulings in a conference call on December 12th. So I mean, you’re leaving this case in a mess, with all due respect, Your Honor.
[[Image here]]
THE COURT:
And I beg your pardon, sir. I did not make this case a mess. It’s what you have brought to me, sir. I’m doing what I believe is right and that’s what I was elected to do. Also, I will tell you that I don’t feel safe with this child going to see her father when she is suffering like she is and worried like she is, and he will still not say that he will not beat her again.
MR. MCCORVEY:
Well, Your Honor, Louisiana Law specifically protects a parent’s right to use reasonable corporal punishment on them children.
THE COURT:
When a child is afraid like that, to the point that she needs to have counseling because she is afraid to go to her father’s house because she might be beaten?
MR. MCCORVEY:
Your Honor, three spankings in the ten years that Mr. Hadnot has known *261 his daughter does not create a reasonable fear of being—
THE COURT:
I think the one that happened on that Saturday morning created a reasonable fear, and she’s being treated for that fear.
[[Image here]]
THE COURT:
He can use reasonable discipline, but he cannot beat her with a belt 15 times. MR. MCCORVEY:
Well, Your Honor, I mean, look, that’s a protected right in the State of Louisiana, unless some — the Legislature changes the law and says that you can’t use corporal punishment on your child. Your Honor, you — I mean, come on, this case is about her intentionally refusing your order. She produced no—
THE COURT:
I think she had every right to and that’s as far as it goes.... [F]or good cause shown she does not have to obey the order. And I think that she showed good cause today why she did not want him to have visitation.
|sIt is well settled that each child custody case must be viewed in light of its own particular set of facts and circumstances. Pinegar v. Harris, 2006-2489, p. 9 (La.App. 1 Cir. 5/4/07), 961 So.2d 1246, 1252. Moreover, the best interest of the child is always the paramount consideration in child custody cases. Henry v. Henry, 2008-0689, p. 3 (La.App. 1 Cir. 9/23/08), 995 So.2d 643, 645; La. Civ.Code art. 131.[5]
As noted by the trial court in its reasons above, we are mindful that corporal punishment, when reasonable in degree, used by a parent of a minor child for disciplinary reasons is permitted in Louisiana. See La. R.S. 14:18; La. Civ.Code art. 218.[6]
In the instant case, the trial court determined that the June 2007 incident did not amount to reasonable discipline of M.D.M. by Mr. Hadnot. Rather, the trial court concluded that Mr. Hadnot’s actions created a “reasonable fear” in M.D.M. that if she returned for visitation with him, she would be subjected to another such incident. Based on the unique facts and circumstances presented herein, we agree with these findings. The trial court, taking into consideration M.D.M.’s best interest, determined that Ms. Mason had shown good cause for not obeying the order regarding visitation. Following our review of the record and applicable law, we find no abuse of discretion in the trial court’s ruling.
M.D.M. was almost twelve years old at the time of the incident. She was disciplined by her father for lying to him about bringing her cell phone with her during | ¡¡previous visits with him. Mr. Hadnot admitted to striking M.D.M. 10 to 15 times with a belt the morning after they *262 arrived in Houston for the scheduled visitation. Moreover, according to M.D.M., she was aware of her father’s intentions the night before the incident and was anticipating the punishment. In this court’s opinion, Mr. Hadnot’s actions did not constitute reasonable discipline so as to be considered corporal punishment in this instance. He went beyond that which is reasonable in disciplining M.D.M., thus, providing Ms. Mason with good cause to deny him any visitation with his daughter. Accordingly, Ms. Mason was not in contempt of court for her actions.
CONCLUSION
For the above and foregoing reasons, the trial court’s March 10, 2008 judgment denying Mr. Hadnot’s rule for contempt is affirmed. All costs associated with this appeal are assessed against Mr. Hadnot.
AFFIRMED.
HUGHES, J., dissents with reasons.

. According to the record, Ms. Mason and M.D.M. reside in Independence, Louisiana, while Mr. Hadnot resides in Houston, Texas.

. M.D.M. was just two months shy of her twelfth birthday at the time of this incident.

. According to the record, there was never any action taken by OCS against Mr. Hadnot, and the case was closed.

. Louisiana Civil Code article 131 provides as follows: "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child."

. Louisiana Revised Statutes 14:18 provides, in pertinent part, as follows:
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
[[Image here]]
(4) When the offender’s conduct is reasonable discipline of minors by their parents, tutors or teachers....
Louisiana Code of Civil Procedure article 218 provides: "An unemancipated minor can not quit the parental house without the permission of his father and mother, who have the right to correct him, provided it be done in a reasonable manner."