HUGHES, J.
| sThis is an appeal from a summary judgment dismissing the alleged tortfeasor and his insurance company (also named as a defendant as the other driver’s uninsured/underinsured motorist carrier) in this automobile accident case. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On October 25, 2003 a vehicular collision occurred on Louisiana Highway 67, north of Clinton, Louisiana, between a 1990 Chevrolet pick-up truck driven by Fred Dunn, Jr., and a flat-bed tandem axle trailer being pulled by a 2000 Chevrolet pickup truck driven by Randall Hodges. After colliding with the Hodges trailer, the Dunn pick-up truck then struck, head-on, a 1998 Chevrolet pick-up driven by Brian Keith Yarborough. Mr. Dunn was killed in the accident, and both Mr. Yarborough and a passenger in Mr. Dunn’s vehicle, Malcolm Thomas, were injured.
In October of 2004 both Mr. Thomas and the heirs of Mr. Dunn brought separate suits against Mr. Hodges and his insurer, State Farm Mutual Automobile Insurance Company (“State Farm”), claiming that the accident was caused by Mr. Hodges’ trailer crossing into Mr. Dunn’s lane of travel. State Farm was also named as a defendant in its capacity as the uninsured/underinsured motorist carrier for Mr. Dunn.
These suits were consolidated for trial in the district court. Subsequently, Mr. *1276 Hodges and State Farm filed motions for summary judgment contending that all the evidence that had been submitted showed that Mr. Hodges was lawfully traveling in his own lane when Mr. Dunn caused the accident by driving across the centerline and that the plaintiffs were unable to prove any negligence or fault on the part of Mr. Hodges that contributed to the accident.
14After a November 4, 2009 hearing on the motions for summary judgment, the trial court rendered judgment in favor of the defendants, dismissing the plaintiffs’ consolidated suits. Plaintiffs have appealed, asserting that the trial court erred in granting summary judgment, as material issues of fact remain unresolved in the case.
LAW AND ANALYSIS
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, 2002-1072, p. 5 (La.4/9/03), 842 So.2d 373, 377; Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30.
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. Hines v. Garett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765.
1¡;A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id., 2004-0806 at p. 1, 876 So.2d at 765-66.
On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. See LSA-C.C.P. art. 966(C)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judg *1277 ment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). See also Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority, 2007-0107, p. 9 (La.App. 1 Cir. 2/8/08), 984 So.2d 72, 79-80; Cressionnie v. Intrepid, Inc., 2003-1714, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
In the instant case, the plaintiffs’ pleadings allege the accident was caused by Mr. Hodges, in negligently allowing the trailer he was pulling | fiwith his truck to cross the centerline. Plaintiffs also argue that Randall Hodges was further negligent in allowing a four-wheeler to become loose and fall off his trailer into Mr. Dunn’s lane of travel. Conversely, the defendants produced affidavit and deposition testimony showing that Mr. Hodges was not transporting a four-wheeler, that his trailer was empty prior to the accident, and that he did not drive his vehicle or trailer into Mr. Dunn’s lane of travel.
Randall Hodges testified by affidavit and deposition that immediately prior to the accident he was traveling southbound on Highway 67, with passengers Cody Hodges, his son, and Lane Hodges, his nephew. Mr. Hodges testified that he was pulling an empty flat-bed trailer behind his truck. Mr. Hodges further stated that he was following a pick-up truck driven by his brother, Rodney Hodges (Lane’s father), and that he, in turn, was followed by his friend, Brian Keith Yarborough, driving a third pick-up. Neither Rodney Hodges nor Mr. Yarborough had passengers in their vehicles. Rodney was also towing a trailer behind his truck and Mr. Yarbor-ough had a four-wheeler in the bed of his truck.
Mr. Hodges further testified that he and his companions were en route back to their respective homes in the Baton Rouge area, after spending the day at a hunting camp in Mississippi. Mr. Hodges stated that although he had used the trailer he was towing to haul a tractor earlier that day, he had left the tractor in Mississippi. He further said that they were going to stop at a Mr. Hooge’s barn near Clinton to store the trailer Rodney Hodges was pulling. Mr. Hodges testified that his brother, Rodney, had already made the turn into the driveway leading to Mr. Hooge’s barn, when he saw the Dunn truck swerving into his lane. Mr. Hodges had already slowed his vehicle and activated his turn signal in preparation for turning into the driveway, which 17he said was about 100 yards away, and upon seeing the Dunn vehicle swerve into his lane, he began to pull onto the shoulder of the road in an attempt to avoid an accident. According to Mr. Hodges, Mr. Dunn’s truck “clipped” the left rear section of his trailer and then went on to collide head-on with Mr. Yarborough’s truck, which was behind him.
The testimony of Brian Keith Yarbor-ough, Cody Hodges, and Lane Hodges reiterated and confirmed the testimony of Randall Hodges. Rodney Hodges did not witness the accident itself, but testified that after the accident he saw all of the vehicles resting in the southbound lane or on the southbound shoulder. Mr. Yarbor-ough further testified that he had a four-wheeler strapped down in the bed of his truck but that the impact of Mr. Dunn’s truck caused the straps to break, and the four-wheeler was thrown out onto the highway.
While Malcolm Thomas initially gave a March 6, 2007 affidavit indicating that the •Hodges trailer had crossed into Mr. Dunn’s lane, causing the accident, and that Mr. Dunn did not cross into the southbound lane until after he was struck by the trailer, he later withdrew these assertions in deposition testimony. In Mr. Thomas’s subsequent deposition testimony, he ad *1278 mitted that he never saw either Randall Hodges’ truck or trailer come into his lane before the accident. Mr. Thomas testified that immediately before the accident he heard “something hit the truck” on what he thought was the right side. Mr. Thomas stated that he turned his head to the right to look for the source of the noise, and then when he turned his head back toward Mr. Dunn, he saw headlights and “that was it.” At that point, he lost consciousness. Mr. Thomas testified that the impact occurred in the southbound (Mr. Hodges’) lane of travel.
|sThe investigating officer for the accident, Louisiana State Trooper Joe Billingsly, testified by depositions taken on June 7, 2005 and March 11, 2009. He identified the accident report he prepared regarding the instant accident, and the report was attached as an exhibit to his March 2009 deposition. Based on the statements of the witnesses, the position of the vehicles after the accident, and physical markings on the roadway, Trooper Billingsly concluded that the accident occurred when Mr. Dunn’s vehicle crossed the centerline and struck the other two vehicles in their lane of travel. Trooper Billingsly also concluded that both Mr. Hodges and Mr. Yar-borough were engaging in “normal movement” immediately prior to the accident. Trooper Billingsly further testified that both Mr. Hodges and a blood sample from Mr. Dunn were subjected to blood alcohol testing, and that the results of the blood alcohol testing showed blood alcohol levels of 0.0% for Mr. Hodges and 0.17% for Mr. Dunn.
In support of their contention that Mr. Hodges caused the accident, plaintiffs submitted the deposition testimony of Irma Dyer, who resided near the accident site at the time of the accident. Early in her deposition, Ms. Dyer stated: “A four-wheeler had fell [sic] off the back of some hunter’s truck, and [Fred Dunn] was trying to dodge it, and he got hit head-on.” Upon further questioning, it became clear that Ms. Dyer was inside her house at the time of the accident and did not see the collision. Ms. Dyer admitted that she was merely repeating remarks she had heard from unidentified person(s) present at the accident scene during the subsequent investigation.
Trooper Billingsly testified that he made an inquiry of persons present at the accident scene as to whether anyone had been a witness to the |9accident. He further testified that, aside from the Hodgeses, Mr. Yarborough, and Mr. Thomas, there were no other witnesses.
The plaintiffs further rely on the testimony of accident reconstruction expert, Michael S. Gillen. Mr. Gillen was provided with the statements and depositions that had been taken prior to his review of the accident, along with the accident report (including accident scene photographs) prepared by Trooper Billingsly.[1] Although Mr. Gillen was not hired to reconstruct the accident, after reviewing the documents provided to him, he stated that it was equally likely for the accident to have occurred in either lane.
In their appellate brief, the plaintiffs also point to the testimony of Lane Hodges, apparently in an attempt to show a remaining question of fact as to whether Randall Hodges did, contrary to defense testimony, have a four-wheeler on his trailer prior to the accident. The plaintiffs’ appellate brief states the following:
*1279 Lane Hodges testified as to two (2) 4-wheelers. He testified that his dad, Randall Hodges, and Keith (Keith Yar-borough) each had a 4-wheeler.... His dad’s 4-wheeler was in the back of his truck and Keith’s (Keith Yarborough) 4-wheeler was in the bed of his truck.... Lane Hodges testified they were going to drop off the 4-wheeler in his dad’s truck on the Hooge’s [sic] property. [Emphasis added.]
However, plaintiffs have confused the two Hodges brothers in their argument. Lane Hodges’ testimony actually reflects that Randall Hodges was his uncle, while Rodney Hodges was his father; facts which were also testified to by both Rodney and Randall Hodges. Although Lane Hodges gave testimony indicating that his father, Rodney Hodges, may also have been transporting a second four-wheeler in his truck, none of the other | ^witnesses were asked about this fact and since Rodney’s truck was not involved in the instant accident, it is not relevant to this inquiry.
In this same vein, the plaintiffs/appellants further point to the fact that Randall Hodges was questioned by the investigating law enforcement officers at the accident scene about whether he had a four-wheeler on his trailer, directing this court’s attention to the photograph of a four-wheeler at the accident scene introduced into evidence. However, Trooper Billingsly concluded that, at the time of the accident, Randall Hodges’ trailer was empty and that the four-wheeler found at the scene was thrown from the back of Mr. Yarborough’s truck, coming to rest just off of the southbound shoulder.
Next, in brief to this court, plaintiffs/appellants attempt to raise as a question of fact some discrepancies in the testimony of the Hodges/Yarborough witnesses concerning their activities at their Mississippi hunting camp during the day leading up to the accident at issue. Plaintiffs/appellants point out that “Randall Hodges[ ] testified he went to Mississippi for bow hunting and to drop off equipment.... However, Keith Yarborough testified ... Randall Hodges[ ] went to Mississippi to plant food plots for deer.” Our review of the depositions at issue reveals that the questioning during the taking of the depositions did not focus on obtaining an exhaustive list of the activities engaged in by Mr. Hodges and his companions at their hunting camp, which may explain any differences in the witnesses’ statements. Moreover, these activities were not shown to have any relevance to the vehicular accident occurring later in the day.
Plaintiffs/appellants also, in brief to this court, place some emphasis on the activities of Mr. Dunn and Mr. Thomas prior to their arrival at the accident site. In particular, the plaintiffs/appellants recite deposition lutestimony in the record of Mr. Thomas and reference the affidavit of Lillie Matthews,[2] wherein these witnesses state that they did not see Mr. Dunn drink alcoholic beverages when in their company during the time leading up to the accident. Nonetheless, just because these witnesses did not see Mr. Dunn consume alcoholic beverages on the day of the accident does not mean that he did not do so. Moreover, *1280 direct evidence established that Mr. Dunn’s blood alcohol level was 0.17 %.
In their appellate brief, the plaintiffs/appellants further enumerate as genuine issues of fact the following: in addition to Trooper Billingsly, four other troopers were involved in the accident investigation; the accident report indicates Acadian Ambulance arrived at 19:42 (7:42 p.m.); the accident report indicates that Trooper Bill-ingsly arrived at 20:29 (8:29 p.m.); photographs taken at the scene showed Acadian Ambulance paramedics performing CPR on Mr. Dunn[3] but “miraculously the radio remote Mr. Dunn allegedly had in his hand at the time of the accident did not fall out of his hand;” and that Trooper Billingsley testified that he witnessed the coroner draw a post-mortem blood sample from Mr. Dunn but that “[t]his procedure likewise did not cause the remote to fall out of Mr. Dunn’s hand.” Nevertheless, the plaintiffs/appellants fail to state what significance should be attached to these facts, nor is it immediately apparent that these facts were contested or what other evidence in the record conflicts with this evidence.
| ^Furthermore, the plaintiffs/appellants emphasize the fact that accident recon-structionist Michael Gillen questioned whether a “gouge” mark, noted by Trooper Billingsly as having been made in the roadway following the collision of the vehicles involved in the accident, was in fact related to the accident. In his deposition testimony, Mr. Gillen cited the roadway construction in the area of the accident and particularly the fact that the surface of the roadway had been “scarified,” the top layer having been mechanically scraped off, as making it difficult to determine whether the gouge marks pre-existed or were caused by the accident. Mr. Gillen admitted that he did not personally examine the surface of the roadway, though he did drive through the area, and he acknowledged that the roadway has since been resurfaced, eliminating all evidence. More importantly, Mr. Gillen unequivocally stated that he could not reach a conclusion as to which lane the accident occurred in. At most, Mr. Gillen’s testimony would result in discounting the gouge mark as evidence in resolving the issues before the court on motion for summary judgment.[4] Nevertheless, the remaining uncontrovert-ed testimony still places the accident in *1281 Randall Hodges’ lane, with no affirmative evidence having been produced • to show any fault on his part in causing the accident.
|lsAs pointed out hereinabove, when a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials but must respond with affirmative evidence. Plaintiffs have failed to meet their burden to show any fault on the part of Randall Hodges in the instant accident.[5] Therefore, we find no error in the trial court’s grant of summary judgment in this case.
CONCLUSION
For the reasons assigned herein, the summary judgment granted by the trial court in favor of Randall Hodges and State Farm Mutual Automobile Insurance Company, in both capacities, is hereby affirmed. All costs of this appeal are to be borne by plaintiffs/appellants, Malcolm Thomas, Larry Grant, Lisa Dunn Thomas, and LaFaye Dunn.
AFFIRMED.

. While Mr. Gillen stated in his deposition testimony that there were some sixty police photographs taken in conjunction with the accident investigation, only about ten of these photographs were filed into the record, annexed to the various depositions.

. The affidavit of Lillie Matthews states that she is the mother of LaFaye Dunn, one of Fred Dunn's children, that Mr. Dunn and Mr. Thomas were at her home at about 5:00 p.m. on the day of the accident, that she offered Mr. Dunn a beer, but that he did not accept the beer or drink any other alcoholic beverages at her home. Ms. Matthews further averred that she had been in Mr. Dunn’s presence over the course of twenty-two years "on many occasions” when he had consumed alcohol, and that Mr. Dunn did not display any of "his ways and/or actions after he consumed alcohol” on the date of the accident.

. This photograph does not appear in the record on appeal.

. We note that Mr. Gillen, in his first deposition, noted a discrepancy in Trooper Billingsly’s accident report, in that on the legend for the diagrams of the accident scene, he indicated that the reference point and line for his measurements was the fog line, while on the diagram an arrow was drawn to the edge of the roadway and marked as the reference line. However, subsequent to Mr. Gillen’s first deposition, Trooper Billingsly was informed of the discrepancy by one of the attorneys involved in the case. After receiving this information, Trooper Billingsly testified in his 2009 deposition that he reviewed his accident report and the photographs he had taken of the accident scene and realized he had made a mistake in the legend, in that he had mistakenly labeled the reference point and line as the fog line when he should have labeled it as the edge of the road, as indicated on the actual diagrams attached to the report. Trooper Billingsly then completed a narrative supplement to the original accident report, clarifying that rather than stating that the reference point and line used was the fog line, the accident report legend should have stated that the reference point and line used was the roadway edge. We conclude that the discrepancy recognized by Mr. Gillen was thus resolved by the supplement to the accident report, along with Trooper Billingsly’s testimony; therefore, we conclude that no question of material fact remains as to this issue; particularly as plaintiffs have produced no evidence to contradict the trooper’s testimony.

. We note that in this case, not only were the plaintiffs unable to show fault on the part of defendant Randall Hodges, but they also had the burden to justify Mr. Dunn’s movement outside his lane of travel, which they likewise failed to do. Under LSA-R.S. 32:79, the driver on a roadway laned for traffic must drive as nearly as practicable entirely within a single lane and must not move from that lane until he or she has first ascertained such movement can be made with safety. When a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane was negligent, and the burden is on him to show that the collision was not caused by his negligence. Hano v. Louisiana Department of Transportation and Development, 519 So.2d 796, 798 (La.App. 1 Cir.1987), writ denied. 523 So.2d 861 (La.1988) (citing Simon v. Ford Motor Company, 282 So.2d 126, 128 (La.1973); Jones v. Continental Casualty Company of Chicago, Illinois, 246 La. 921, 942-43, 169 So.2d 50, 57 (1964)). See also Gatlin v. Kleinheitz, 2009-0828, p. 6 (La.App. 1 Cir. 12/23/09), 34 So.3d 872, 875, writ denied, 2010-0084 (La.2/26/10), 28 So.3d 280.